UNITED STATES of America,
Plaintiff-Appellee,

v.

66 PIECES OF JADE AND GOLD JEWELRY, Defendant,

Warren Clark Anderson,
Claimant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

ONE 1977 MERCEDES–BENZ, VIN 11603672001815, California License 250 UVL, its tools and appurtenances, Defendant.

Micheline Ly Sing Lao,
Claimant-Appellant.

Nos. 83–6347, 83–6348.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1985.

Decided May 14, 1985.

---

Kathryn A. Snyder, San Diego, Cal., for plaintiff-appellee.

Phillip A. DeMassa, San Diego, Cal., for claimant-appellant.

Before NELSON, CANBY, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

By these consolidated appeals,[1] defendant-claimant-appellant Warren Clark Anderson ("Warren"), and claimant-appellant Michelene Ly Sing Lao challenge the district court's judgment forfeiting various pieces of jade and gold jewelry and a Mercedes-Benz automobile, and assessing a civil penalty against Warren.

## BACKGROUND

The claimants in this case had a close personal relationship from 1973 to 1978. During this time Warren and Ms. Lao frequently travelled in and out of the United States. Ms. Lao is currently a citizen of Tahiti and the registered owner of the Mercedes automobile in question.

This action is based on Warren's failure to declare certain items of jewelry as required by 19 U.S.C. § 1497 ("§ 1497"). The factual dispute in the district court centered around the conduct of Customs Inspector Theresa Law and Customs Agent Seth Nadel at the San Ysidro Port of Entry on July 2, 1981. When the Mercedes arrived at the primary inspection area, it was driven by Wayne Anderson, Warren's father, with Mrs. Anderson, Warren's mother, in the front seat and Warren in the back seat. Law asked the Andersons what they were bringing into the country. Mr. Anderson responded "nothing," and Law asked the question again. Law testified that she distinctly remembered using the word "anyone" in asking the question the second time. According to Law's testimony, the second time she asked the question Mr. Anderson again responded "No" and Warren shook his head no. The district court found that Law's testimony that she inquired twice as to whether anyone was bringing anything into the country was "not disputed in any credible way." The district court also concluded that whether Warren had shaken his head negatively was of no significance. The court reasoned that because Law's question was addressed to "anyone," a non-response was the equivalent of a negative shake of the head.

Law then took the Andersons to the secondary inspection area, left the Andersons, and searched the Mercedes. She found one jade carving and two briefcases in the back seat. She brought one locked briefcase back into the secondary inspection area and asked who owned it. Warren claimed the briefcase and commented that Law had no respect for his property. Warren also told Law that the latches had been broken previously, and then opened the padlock on the briefcase. Law took the briefcase back outside, and found the other jade and gold items at issue in the briefcase. Shortly thereafter Agent Nadel arrived to investigate the incident. Law informed him of the situation and Nadel placed Warren under arrest, read him his Miranda rights, and proceeded to interrogate him. During the interrogation Warren informed Nadel that he had been a practicing Buddhist since 1974 and that he carried the jade and gold Buddhas in and out of the country with him when he traveled.

Warren was indicted on charges of smuggling and passport fraud on July 15, 1981. On December 22, 1981, he was convicted of passport fraud, and the smuggling charges were dismissed. The government filed a complaint for forfeiture of the jewelry on February 11, 1982. On September 29, 1983, Judge Keep entered judgment for the government, ordering forfeiture of the jade and gold jewelry and the Mercedes, and assessing a civil penalty of $26,265 against Warren. Claimants failed to seek a stay of the judgment pending appeal, and the Mercedes and the jade and gold were turned over to the United States Customs Service by service of process of the United States Marshal in December, 1983.

## DISCUSSION

### 1. Jurisdiction

■■■ This court has held that jurisdiction in a forfeiture action is defeated when

---

1. Where a distinction is necessary *United States v. 66 Pieces of Jade and Gold Jewelry* will be referred to as the jewelry case and *United States v. One 1977 Mercedes-Benz* will be referred to as the Mercedes case. If no distinction is made, the discussion has equal application to both cases.

the property in question, the *res,* is removed from the control of the court. *United States v. United States Currency in the Amount of $110,000.00,* 735 F.2d 326, 327 (9th Cir.1984); *United States v. $57,-480.05 United States Currency and Other Coins,* 722 F.2d 1457, 1458–59 (9th Cir. 1984); *American Bank of Wage Claims v. Registry of the District Court of Guam,* 431 F.2d 1215, 1218–19 (9th Cir.1970). Because forfeiture proceedings are *in rem,* the court's subject matter jurisdiction is dependent on its continuing control over the property. *$57,480.05,* 722 F.2d at 1458. Furthermore, once the property is released from the court's control, the court is powerless to effectuate a remedy because it lacks personal jurisdiction to order the persons holding the property to return it. *Id.* at 1459; *American Bank,* 431 F.2d at 1219. The court's control over the *res* can be protected by a stay of the district court's judgment pending appeal. *$57,-480.05,* 722 F.2d at 1459. In this case, however, the claimants failed to obtain a stay, and the Mercedes and the jewelry have been turned over to the Customs Service. Warren argues that the jewelry was in the control of the district court as an exhibit and should not have been released to the Customs Service without an order of the court. We find that it would be inappropriate to have the availability of *in rem* subject matter jurisdiction determined by whether or not the property in question has been entered as an exhibit. Forfeiture claimants can protect their right to an appeal by seeking a stay of the district court's judgment whether the property has been made an exhibit or not. Where the claimants have failed to seek the stay available to them, we will not protect their right to an appeal by extending the concept of the court's control over exhibits to meet this situation. Under these circumstances, we lack subject matter jurisdiction to determine the validity of the forfeitures in question.

■ We have jurisdiction to determine the validity of the $26,265 civil penalty even though the jewelry and the Mercedes have been placed beyond the court's con-trol. In addition to forfeiture, the amended complaint in the jewelry case sought a civil penalty from Warren as the person who failed to make the required declaration under § 1497. The civil penalty claim is based on *in personam* jurisdiction over Warren in addition to the *in rem* jurisdiction of the civil forfeiture action. We find that the release of the *res* and the loss of *in rem* jurisdiction over the forfeited items does not affect this court's *in personam* jurisdiction to review the civil penalty assessed against Warren. *See United States v. An Article of Drug Consisting of 4,680 Pails,* 725 F.2d 976, 982–84 (5th Cir.1984) (*in personam* jurisdiction before and after release of *res* made continuing control over *res* non-essential to jurisdiction). Accordingly, those portions of these consolidated appeals which challenge the validity of the forfeitures are dismissed, and we turn to the merits of Warren's challenges to the civil penalty.

## 2. Failure to Declare the Jade and Gold

■ The district court found that the government was entitled to a civil penalty of $26,265, the value of the jewelry, because Warren failed to declare the jewelry as required under § 1497. The district court's factual findings, such as the finding that Warren had an opportunity to make a declaration, are reviewable under the clearly erroneous standard. *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. One Twin Engine Beech Airplane,* 533 F.2d 1106, 1107–08 (9th Cir. 1976). The questions of law, such as whether the conduct in question violated § 1497, are reviewable *de novo. One Twin Engine Beech Airplane,* 533 F.2d at 1108.

■ In forfeiture cases, the government must first make a preliminary showing of probable cause to believe that the property was used in the violation. 19 U.S.C. § 1615. The burden then falls upon the claimant either (1) to refute the government's showing of probable cause, or (2) to

prove that the property was not used for the illegal purpose as alleged. *Id. See United States v. One 56-Foot Yacht Named Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983). If the claimant chooses to prove that there was no violation, he must do so by a preponderance of the evidence. *Id.* We agree with the district court that the government met its burden of showing probable cause. The record supports Judge Keep's finding that there was probable cause to believe that Warren violated § 1497 by failing to declare the jewelry until after Law had discovered the items.

■ Warren argues that he did not violate § 1497 because he was not given an opportunity to declare the jewelry or to amend his declaration. The district court found that Warren had an opportunity to declare the jewelry, and an opportunity to amend. These factual findings are not clearly erroneous. This court has held that the traveler has the burden of coming forward with items that have to be declared. *United States v. Davis,* 597 F.2d 1237, 1239 (9th Cir.1979) (citing *United States v. Mirenda,* 443 F.2d 1351, 1356–57 (9th Cir.), *cert. denied,* 404 U.S. 966, 92 S.Ct. 343, 30 L.Ed.2d 286 (1971)). Warren had the opportunity to declare the jewelry when Law asked whether anyone was bringing anything into the country, and the opportunity to amend his declaration when Law entered the secondary inspection area and he spoke to her while he was unlocking the briefcase. Law's conduct at the port of entry did not force Warren into non-compliance with § 1497 as he claims.

■ Warren also argues that his statement to Law that he owned the briefcase and his statements to Nadel explaining the history of the jewelry and its relation to his religious beliefs were declarations of the jewelry which satisfied § 1497. Section 1497 and the regulations promulgated under § 1497 refer to "article" or "articles" to be declared, not baggage. § 1497; 19 C.F.R. §§ 148.1, 148.11, and 148.16 (1984). Baggage is referred to separately in § 1497 and 19 C.F.R. § 148.16 (1984). Allowing Warren to declare the jade and gold

by admitting ownership of the briefcase would be inconsistent with the traveler's burden, which this court recognized in *Davis,* to come forward and declare items. Warren's statements to Nadel were not declarations under § 1497 either. Section 1497 and 19 C.F.R. § 148.11 (1984) require a declaration by the traveler before examination of baggage has begun, and 19 C.F.R. § 148.16 (1984) modifies these provisions by allowing amendment after inspection has begun but before any undeclared articles have been found if there is no fraudulent intent by the traveler. Warren's statements to Nadel were not declarations because they were not made until after the jewelry was discovered.

■ Finally, Warren argues that most of the jewelry did not have to be declared because it had been in the United States on previous occasions. We agree with the district court's conclusion that even if the items had previously been in the United States, they had to be declared when they were brought through customs again. Section 1497 and 19 C.F.R. § 148.11 (1984) require all articles to be declared. No exception is made for articles which have been in the United States before. *See also* 19 C.F.R. § 148.1 (1984) (establishing procedures by which articles of foreign origin can be registered when they are taken out of the United States and declared more easily when they are returned to the country). *Cf. United States v. Friedman,* 501 F.2d 1352, 1353–54 (9th Cir.), *cert. denied,* 419 U.S. 1054, 95 S.Ct. 635, 42 L.Ed.2d 651 (1974) (finding that illegal drugs which were taken out of the United States and then returned were imported); *United States v. Claybourn,* 180 F.Supp. 448, 452 (S.D.Cal.1960) (holding that 19 U.S.C. § 1461 requires all merchandise, whether previously in the United States or not, to be presented for inspection when entering the country). The district court correctly found that the jewelry had to be declared whether the items had previously been in the United States or not.

### 3. Failure to Admit the Lao Deposition

The Lao deposition was noticed for June 25, 1982 in Tahiti. On June 2, 1982 the government sought a protective order in the Mercedes case. The government never sought a protective order in the jewelry case. Magistrate Harris granted the protective order in the Mercedes case on June 29, 1982, and returned an unsigned order to the parties in the jewelry case on June 30, 1982. The deposition was conducted on June 25, 1982 as scheduled. Ms. Lao testified regarding her relationship with Warren, her ownership of the Mercedes, and the presence of the jewelry in the United States on previous occasions. Because we find that this court lacks jurisdiction to review the validity of the forfeiture of the Mercedes we do not address the correctness of the protective order in the Mercedes case. We do, however, consider Warren's argument that the failure to admit the Lao deposition in the jewelry case prohibited him from establishing that his conduct was not in violation of § 1497.

█ Fed.R.Civ.P. 32(d)(2) provides that any objection to the taking of a deposition "because of disqualification of the officer before whom it is to be taken is waived unless made before the taking of the deposition begins or as soon thereafter as the disqualification becomes known ..." In this instance the government failed to object before the taking of the Lao deposition in the jewelry case. At trial Judge Keep sustained the government's objection to the admission of the Lao deposition in the jewelry case on the ground that the shorthand reporter who administered the deposition was not qualified to administer oaths in Tahiti. Objection to admission of the Lao deposition on this ground at trial was untimely under Rule 32(d)(2) and the Lao deposition should have been admitted in the jewelry case.

█ Although the Lao deposition should have been admitted in the jewelry case, the failure to do so was harmless error. The Lao deposition was relevant to the jewelry case only to establish the presence of the jewelry in the United States on previous occasions. As noted above, we agree with Judge Keep that the supposed presence of the jewelry in the United States prior to the entry in question did not affect the need to declare the jewelry. Therefore, the failure to admit the Lao deposition was harmless error under Fed. R.Civ.P. 61 because it could not have had any effect on the outcome of the litigation. *See Cancellier v. Federated Department Stores,* 672 F.2d 1312, 1316 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982).

### 4. Due Process

Warren claims that the $26,265 civil penalty should not be imposed even if his conduct was in violation of § 1497, because the government's delay in instituting the forfeiture proceedings was a violation of his due process rights under the standard adopted by the Supreme Court in *United States v. Eight Thousand Eight Hundred and Fifty Dollars,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). The district court found no due process violation. We review this determination *de novo* as a question of law. *McConney,* 728 F.2d at 1202.

In *$8,850,* the Court addressed the due process implications of an eighteen-month delay in the initiation of forfeiture proceedings. 461 U.S. at 556, 103 S.Ct. at 2008. The Court held that the four factors to be considered in evaluating whether a delay in initiating forfeiture proceedings violates due process are the length of the delay, the reason for the delay, the assertion by the claimant of a right to a hearing, and the prejudice to the claimant. *Id.* at 564, 103 S.Ct. at 2012. Applying this test, the Court found no due process violation in the eighteen-month delay, emphasizing that the pendency of criminal proceedings presents a good, although not absolute, justification for government delay in initiating a civil forfeiture action. *Id.* at 567, 568–70, 103 S.Ct. at 2013, 2014–15.

█ Examining the factors outlined by *$8,850,* we find no due process violation in

this case. The seizure took place on July 2, 1981, a criminal indictment was returned on July 15, 1981, the smuggling charges were dismissed on December 22, 1981, and the forfeiture proceedings against the jewelry were commenced February 11, 1982. Criminal smuggling and passport fraud charges were pending against Warren for all but seven weeks of the seven months between the seizure of the jewelry and the initiation of the forfeiture proceedings. There is no showing that the government was not diligent in its prosecution of the criminal proceedings, and had there been a criminal conviction on the smuggling charge the forfeiture could have been achieved under 18 U.S.C. § 545, obviating the need for civil forfeiture. The seven-week delay between the termination of the criminal proceedings and the initiation of the civil forfeiture action is a reasonable time to allow the government for filing the civil forfeiture complaint on the facts of this case. Warren's failure to file a petition for remission of the jewelry or seek a hearing on the seizure of the jewelry before trial is also significant under the *$8,850* analysis. Warren argues that the failure to notify him that the jewelry was subject to forfeiture limited his ability to seek an earlier hearing. This argument is not convincing since Warren's falsification of his address at customs contributed to the faulty notice. Finally, there is no evidence that the delay prejudiced Warren's ability to present a defense.

AFFIRMED IN PART, DISMISSED IN PART.