**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**ONE LEAR JET AIRCRAFT, SERIAL NO. 35A–280, REGISTRATION NO. YN–BVO, Defendant,**

**Leybda Corp., Claimant–Appellant.**

**No. 85–5938.**

United States Court of Appeals, Eleventh Circuit.

Feb. 11, 1988.

Rehearing and Rehearing En Banc Denied March 9, 1988.

---

1572

Ira J. Kurzban, Kurzban, Kurzban & Weinger, P.A., Miami, Fla., for claimant-appellant.

Leon B. Kellner, U.S. Atty., Jonathan Goodman, David O. Leiwant, Sonia Escobio O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, Chief Judge, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK and EDMONDSON, Circuit Judges.

JOHNSON, Circuit Judge:

This case involves a forfeiture proceeding initiated by the government

against a Lear Jet under 8 U.S.C.A. § 1324(b). The aircraft had been used to enter this country by persons who made material misrepresentations on their visa applications. Leybda Corporation intervened as a claimant to the plane, but after trial, the district court ruled that the aircraft was forfeited to the government. *United States v. One Lear Jet Aircraft,* 617 F.Supp. 769 (S.D.Fla.1985). Leybda did not file a stay of judgment with the district court or a supersedeas bond with the appellate court. Therefore, after the expiration of the automatic ten day stay provided by Fed.R.Civ.P. 62(a), the government removed the plane to a warehouse in Missouri. Leybda then filed a timely notice of appeal, and this Court affirmed the forfeiture judgment. *United States v. One Lear Jet Aircraft,* 808 F.2d 765 (11th Cir.1987). The panel held that it had jurisdiction to entertain this appeal even though the aircraft had been removed from the Court's territorial jurisdiction. This opinion was vacated by the full Court, which ordered *in banc* reconsideration of the *in rem* jurisdictional issue. 831 F.2d 221 (11th Cir.1987). We now hold that, because removal of the *res* from a court's territorial jurisdiction destroys that court's *in rem* jurisdiction, *Pennington v. Fourth National Bank,* 243 U.S. 269, 37 S.Ct. 282, 61 L.Ed. 713 (1917), this Court does not have jurisdiction to hear Leybda's appeal.

■ The general rule of *in rem* jurisdiction is that the court's power derives entirely from its control over the defendant *res. Id.* at 272, 37 S.Ct. at 283; *L.B. Harvey Marine, Inc. v. M/V River Arc,* 712 F.2d 458, 459 (11th Cir.1983). Where an appellant fails to file a stay of judgment or a supersedeas bond, and the *res* is removed from the court's territorial jurisdiction, the appellate court does not have *in rem* jurisdiction. *Taylor v. Tracor Marine, Inc.,* 683 F.2d 1361, 1362 (11th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983); *Parks v. B.F. Leaman & Sons, Inc.,* 279 F.2d 529, 532 (5th Cir. 1960). This Circuit has recently reaffirmed this traditional rule. *See Harvey Marine,* 712 F.2d at 459; *Taylor,* 683 F.2d at 1362.

In *Harvey Marine* and *Taylor,* this Court dismissed appeals for lack of jurisdiction where the prevailing party had removed the *res* and where the losing claimants failed to stay the execution of the district court's order. Recent cases in other circuits have reached the same result. *See, e.g., United States v. $79,000 in U.S. Currency,* 801 F.2d 738, 739 (5th Cir.1986) ("Where no supersedeas is filed or steps taken to supersede judgment and the Marshal surrenders custody, neither the district court nor the appellate court retains *in rem* jurisdiction"); *United States v. 66 Pieces of Jade & Gold Jewelry,* 760 F.2d 970, 973 (9th Cir.1985) ("Because forfeiture proceedings are *in rem,* the court's subject matter jurisdiction is dependent on its continuing control over the property"); *Bank of New Orleans & Trust Co. v. Marine Credit Corp.,* 583 F.2d 1063, 1068 (8th Cir. 1978) ("Removal of the *res* from a court's jurisdiction, or distribution of a substitute *res* deposited in the registry of the court, destroys *in rem* jurisdiction"). These cases demonstrate that the traditional *in rem* rule retains vitality.

In *Harvey Marine,* this Court dismissed an appeal as moot where the ship against which an *in rem* action had been brought departed the Court's jurisdiction after the district court dissolved the *in rem* arrest warrant. 712 F.2d at 459. Harvey Marine had filed an appeal from the district court's order dissolving the arrest, but it failed to request a stay of that order and it did not file a supersedeas bond. *Id.* at 458. This Court stated that it could not "proceed to adjudication" where the *res* was no longer within the Court's territorial jurisdiction. In response to Harvey Marine's argument that it was "fundamentally unfair not to adjudicate the merits of the case," the Court noted that there were "various methods to protect appellate jurisdiction in an *in rem* case," *id.* at 459 (*citing Bank of New Orleans,* 583 F.2d at 1068–69; *Parks,* 279 F.2d 529), and it implied that Harvey Marine was at fault for failing to employ any of these methods.

Other courts have stated this position more forcefully, holding that the losing claimant to the *res* is obligated to take

some action to preserve the *res* so that the parties' rights to it could be adjudicated at the district and appellate courts. These courts impose a duty on the claimant to seek a stay of execution of the district court's judgment pending appeal, to file a supersedeas bond, or to take other action to preserve the *res*. *Bank of New Orleans*, 583 F.2d at 1068. *See also United States v. $57,480.05 in U.S. Currency and Other Coins*, 722 F.2d 1457, 1458–59 (9th Cir.1984). Under these circumstances, a claimant who fails to act to preserve the *res* cannot complain when the appellate court dismisses his appeal for lack of *in rem* jurisdiction.

*Taylor* employs an analysis similar to that in *Harvey Marine*, and the cases reach similar results. In *Taylor*, crew members brought an action against their vessel to obtain their wages. The ship was seized and sold, but the proceeds were disbursed to priority lienholders. This Court noted that the crew members failed to seek a stay of the district court's order allowing disbursement of the funds; therefore, the *res* was not before the Court on appeal. 683 F.2d at 1362. Consequently, *in rem* jurisdiction was destroyed, rendering the crew's appeal moot. *Id.*

 Our recent cases control the result in the case at bar. The present case involves a sequence of events which is similar to what occurred in *Taylor* and *Harvey Marine*. After trial below, the district court ordered the plane forfeited to the government. Leybda filed notice of appeal, but it failed to stay the district court's order.[1] Therefore, the judgment became final ten days after the court issued its decree, and the government was free to remove the plane from this Court's jurisdiction. That removal destroyed *in rem* jurisdiction.[2]

In light of the *in rem* jurisdictional rule, the only way in which Leybda might avoid dismissal of its appeal is to fit this appeal

---

**1.** Judge Vance contends that the result in this case is egregious because Leybda had no funds with which to post a bond to stay the judgment. He states that "[h]ad [Leybda] been able to post a supersedeas bond, the appeal would have gone forward without jurisdictional question." Our reading of the record does not support this assertion. Nothing in the record suggests that Leybda ever indicated to the trial court that it was not moving for a stay *because* it had no assets with which to post a bond. Moreover, a review of the record does not suggest that Leybda would have posted a bond even if it had sufficient assets.

In Leybda's reply brief submitted to the panel of this Court, Leybda stated that it "did not need to seek a stay because the court had continuing *in personam* jurisdiction. Moreover, a motion for a stay would have been futile. Leybda has no assets to post a stay." Appellant's Reply Brief at 6. In its *in banc* brief, Leybda reasserted the futility of seeking a stay. Appellant's *In Banc* Brief at 17. The language employed in these briefs demonstrates that impecuniousness was not *the reason* behind Leybda's failing to seek a stay. Instead, we find that Leybda's initial statement that it believed that it "did not need to seek a stay" explains Leybda's failure to take action.

In addition, the record is not clear on the issue of Leybda's access to funds. Leybda cites a corporate officer's affidavit as proof that the corporation's only major asset was the Lear Jet. R 7–243. However, the government alleged that Leybda was a sham corporation established as a commercial cover for the Cuban government.

R 10–252 n. 1. If this latter allegation is true, Leybda may have had access to Cuban government funds. Moreover, this may explain how Leybda's attorney will be recompensed for the more than $41,000 worth of costs and fees he had incurred on behalf of this defunct corporation. *See* R 10–348 & 349.

**2.** Leybda asserts that the government's removal of the aircraft was improper because it was done solely to eliminate this Court's *in rem* jurisdiction. Accidental, fraudulent, or improper removal of the *res* does not destroy *in rem* jurisdiction. *The Rio Grande*, 90 U.S. (23 Wall) 458, 23 L.Ed. 158 (1874). However, after the expiration of the automatic ten day stay provided in Fed.R.Civ.P. 62(a) and absent a stay pending appeal, a prevailing plaintiff is free to execute a judgment in his favor even though the defendant is pursuing an appeal. *See United States v. Verlinsky*, 459 F.2d 1085, 1089 (5th Cir.1972).

In the present case, Leybda did not request a stay, and neither the district court nor this Court stayed the judgment *sua sponte*. Thus, ten days after the district court issued its decree, the government was entitled to do what it wished with the jet. *See $79,000*, 801 F.2d at 740 (The government's removal of forfeited property after the expiration of the ten day stay did not fall within the *Rio Grande* exception where the losing claimant failed to stay the district court's judgment). In this situation, the removal of the aircraft to Missouri was not improper.

within the Court's *in personam* jurisdiction. Precedent from the predecessor to this Court holds that when an original action was brought *in rem* and *in personam*, the court retained jurisdiction even after the *res* was removed from the jurisdiction. *Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148 (5th Cir.1977). Therefore, this Court must determine whether *in personam* jurisdiction existed in this case.

One might argue that jurisdiction in this case was not limited to *in rem* jurisdiction. For example, 28 U.S.C.A. § 1345 provides that:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

In addition, 28 U.S.C.A. § 1355 provides that:

> The district court shall have original jurisdiction, exclusive of the courts of the states, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under Section 1582 of this title.

In its forfeiture complaint, the government alleged that 28 U.S.C.A. §§ 1345 & 1355 provided the district court with jurisdiction, and the district court proceeded with the complaint on that basis. *One Lear Jet*, 617 F.Supp. at 771. At first glance, Section 1345 (jurisdiction where the United States is a plaintiff) may be read to provide a

jurisdictional basis that is independent of the presence of the *res*.[3]

However, a closer examination of these sections indicates that they vest the district courts with subject matter jurisdiction over forfeitures under 8 U.S.C.A. § 1324. This is irrelevant to the question of whether the panel had *in rem* or *in personam* jurisdiction to decide this appeal. In addition, the statute governing forfeitures under the customs laws suggests that these statutes do not supply an independent jurisdictional basis. In part, the customs laws state that, "the storage of property outside the judicial district or customs collection district in which it was seized shall in no way affect the jurisdiction of the court which would otherwise have jurisdiction over such property." 19 U.S.C.A. § 1605. The legislative history of Section 1605 states that the statute was necessary to modify the traditional rule that the *res* "remain in the judicial district of seizure in order that the district court may have jurisdiction when condemnation proceedings are instituted." 1954 U.S. Code Cong. & Admin. News 3900, 3906. The provisions of Title 28 discussed above were in effect when Congress adopted Section 1605. If those provisions were intended to eliminate the traditional requirement that the *res* be within the territorial jurisdiction of the court, Section 1605 was unnecessary. Obviously, the drafters of Section 1605 did not subscribe to this view.[4]

■ Although there is no statutory basis on which to assert that this Court has *in personam* jurisdiction, a limited exception to the *in rem* rule allows a court to retain jurisdiction even though the *res* is no long-

---

**3.** The only statutory provision which requires the *res* to be before the court is 28 U.S.C.A. § 1395(b), which provides:

> A civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found.

However, this section concerns venue, not jurisdiction. Therefore, it does not limit a court's authority to adjudicate forfeitures under Section 1324.

**4.** In the exercise of its regulatory powers, Congress could modify the requirement that the *res* be within the court's territorial jurisdiction, as

long as the claimants were not denied due process. In fact, one district court has stated that, in the absence of a contrary congressional intent, the territorial jurisdiction of a court in a forfeiture proceeding under 28 U.S.C.A. § 1355 is limited only by the territorial limits of the nation and the venue requirements of 28 U.S.C.A. § 1395. *United States v. One 1974 Cessna Model 310R Aircraft*, 432 F.Supp. 364, 368 (D.S.C.1977). There is no support for this conclusion and we decline to adopt it, especially in light of the legislative history to 19 U.S.C.A. § 1605.

er within the court's territorial boundaries.[5] Specifically, where there is an "interface of *in rem* and *in personam* jurisdiction," a court may properly exercise broad *in personam* power over the parties to the *in rem* action. *Inland Credit*, 552 F.2d at 1152. However, precedent in this Court provides little support for the claim that Leybda's appeal falls within this limited category of exceptions.

Factually, *Inland Credit* is different from the present case. In *Inland Credit*, a ship mortgagee brought an *in rem* action against the ship *and* an *in personam* action against the ship's owner. By so doing, the plaintiff invoked both types of jurisdiction. In *One Lear Jet*, the government never invoked *in personam* jurisdiction when it brought suit; it sued the plane, not the purported owner who later intervened.[6]

Other cases which embody exceptions to the *in rem* jurisdictional rule are also distinguishable. In *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330 (5th Cir.1978), a Florida corporation sued for possession of artifacts from a sunken ship located partially within and partially outside the territorial waters of the United States. The United States intervened in the district court and appealed summary judgment in the corporation's favor, arguing that the district court lacked *in rem* jurisdiction to determine the rights of the parties. The Court held that by intervening as a party defendant/claimant, and by stipulating to the district court's admiralty jurisdiction, the United States had waived the requirement that the *res* be before the court. *Id.* at 335. Again, this case is different from *One Lear Jet* because jurisdiction in *One Lear Jet* was based solely on the *res;* the government did not consent to the court's *in personam* jurisdiction.[7] It merely brought a forfeiture action against the aircraft.

■ This Court's precedents do not allow us to assert *in personam* jurisdiction over the government in this case. Such a holding would be an unwarranted extension of the limited exceptions which find *in personam* jurisdiction in certain forfeiture proceedings. Moreover, we reject the notion that the United States consented to *in personam* jurisdiction by invoking the dis-

---

5. Judge Clark's dissent quotes from *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), to support the proposition that the absence of the *res* should-not defeat this Court's jurisdiction. However, as Judge Clark notes, *Continental Grain* involved an action which had been brought both *in rem* and *in personam*. There was an "interface" of the two types of jurisdiction; therefore, the Court could maintain *in personam* jurisdiction over the parties even after the *res* was removed from the jurisdiction. Reliance on *Continental Grain* is unavailing in the present case where such an interface of *in rem* and *in personam* jurisdiction does not exist. In this case, the Court cannot assert *in personam* jurisdiction over the government because the action was solely *in rem*. We recognized this in *Taylor* where we dismissed an *in rem* action on appeal but noted that, if "this case also involved claims *in personam*, jurisdiction might still lie." 683 F.2d at 1362 n. 2. It follows from this comment that there is no basis for *in personam* jurisdiction when an action does not involve *in personam* claims. This is the situation here.

6. Judge Vance accuses the majority of misreading *Inland Credit* because the *Inland Credit* Court stated that it was "undeniable that [the plaintiff] Inland was subject to this court's *in personam* jurisdiction." However, Judge Vance fails to indicate that the Fifth Circuit had pro-vided two reasons for finding *in personam* jurisdiction in *Inland Credit*. In two sentences just prior to the statement quoted by Judge Vance, the Court emphasized that (1) Inland had filed the suit both *in rem* and *in personam*, and (2) that Inland had appealed to the Fifth Circuit in an attempt to recapture a part of another party's *in personam* recovery. 552 F.2d at 1152. From this, the Court concluded that it had *in personam* jurisdiction over Inland. *Id.* However, this does not mean that an appellate court has *in personam* jurisdiction over a plaintiff who merely brings an *in rem* action in the district court.

7. In criticizing the majority's discussion of *Treasure Salvors*, Judge Vance ignores the fact that the parties in *Treasure Salvors* consented to the district court's exercise of *in rem* jurisdiction, but the losing party subsequently challenged that court's jurisdiction on appeal. The case at bar is different because the government is challenging this Court's jurisdiction, to which it never consented. Subsequent cases have deemed this consent issue to be significant. *See Harvey Marine*, 712 F.2d at 459; *Treasure Salvors v. Unidentified Wrecked and Abandoned Sailing Vessel*, 640 F.2d 560, 566 (5th Cir. Mar. 1981) (*"Treasure Salvors III"*).

trict court's *in rem* jurisdiction initially.[8] To hold that the government "consented" to *in personam* jurisdiction would be tantamount to deciding that a court has *in personam* jurisdiction over any participant in an *in rem* proceeding. This does not comport with the traditional analysis of *in rem* jurisdiction.[9]

In sum, this Court lacks *in rem* jurisdiction to hear this appeal because the *res* had been removed from the jurisdiction at the time of the appeal. In addition, the Court does not have *in personam* jurisdiction over the parties because the action was solely *in rem*. Because this Court lacks jurisdiction to hear this appeal, it cannot entertain Leybda's claims on the merits. Accordingly, the appeal is DISMISSED.

VANCE, Circuit Judge, dissenting, in which HATCHETT and ANDERSON, Circuit Judges, join:

I concur in Judge Clark's dissent. I write separately to accent a few points I consider particularly important.

The question that divides the in banc court involves only the right of appeal. Because the panel correctly decided the merits of the case the outcome is not affected. In addition, my views are not in any way critical of the government because of its removal of the aircraft from the Southern District of Florida. Because the judgment of forfeiture was neither superseded nor stayed, the government clearly had a right to remove the aircraft and dispose of it. Finally, my dissent in no way impinges on the activities of federal officials in their war against narcotics importation. I take issue solely with the majority's elimination of the right of appeal.

The majority opinion is disturbing on three different levels. In an important respect it offends fundamental principles of fairness. It also represents a departure from common sense. Finally, it is analytically flawed. Although in some circumstances the law may require courts to depart from what seems to be fairness and common sense, such a departure in this case is unjustified and unsupported by the law of forfeiture and admiralty.

1.

The claimant-appellant was unable to supersede the forfeiture judgment because it

---

8. *Adam v. Saenger*, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649 (1938), provides no support for the proposition that the government consented to the personal jurisdiction of the court simply by bringing this action. *Adam* held that the Fourteenth Amendment allows states to authorize the service of process of a defendant's counterclaim (referred to as a cross-complaint in *Adam*) upon a plaintiff's counsel of record as a condition of allowing the plaintiff access to a state court. *Id.* at 67–68, 58 S.Ct. at 458. It does not state that *in personam* jurisdiction exists simply because a plaintiff brings a claim *in rem*. At best, *Adam* supports a holding that the government would be subject to an *in personam* counterclaim brought by Leybda against the government. In the present case, no such counterclaim was filed. In November 1983, Leybda filed a pleading in response to the government's amended complaint. This pleading was styled "Amended Answer, Affirmative Defenses and Cross–Claim," and it included a third party cross-claim against Management Jets International. Leybda's third party action was severed from this *in rem* action and transferred to district court in Nebraska. R3–137. The claim was subsequently dismissed. Appellant's *In Banc* Brief at 3. This cross-claim was a different lawsuit from the government's *in rem* complaint; therefore, it cannot provide *in personam*

jurisdiction over the government in the case at bar.

9. A recent Fifth Circuit opinion held that a "substitute basis of *in personam* jurisdiction" existed in a forfeiture action brought by the government against a drug. *United States v. An Article of Drug Consisting of 4,680 Pails, More or Less, Each Pail Containing 60 Packets*, 725 F.2d 976, 982 (5th Cir.1984). In that case, the manufacturer intervened and judgment was entered in its favor. Subsequently, the drug was released to the manufacturer who removed it from the district. After the government's motion for a new trial was granted, the manufacturer moved to dismiss for lack of *in rem* jurisdiction. However, the court held that it had a "substitute basis" of jurisdiction because the manufacturer had voluntarily appeared before the court to oppose the new trial motion but had not contested the *in rem* jurisdiction of the court at that time. *Id.* at 984.

As far as *An Article of Drug* is indistinguishable from the present case, we decline to follow it because precedent in this Circuit does not support this holding. We refuse to supply a "substitute basis" of jurisdiction in order to expand this Court's jurisdiction, especially where Leybda could have preserved the Court's *in rem* jurisdiction simply by filing a supersedeas bond.

lacked the funds to do so. Had it been able to post a supersedeas bond, the appeal would have gone forward without jurisdictional question. Federal law and rules of procedure provide that a judgment may be appealed without any supersedeas bond. Here, however, the claimant is being deprived of that important right because of its impecunious state.

To my mind the egregiousness of the result is magnified because this is a forfeiture case—a penal proceeding wherein strict construction of authorizing statutes has been required almost as long as construction itself. As the Supreme Court stated in another era, when alcohol rather than narcotics was the target of law enforcement: "Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V–8 De Luxe Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939). Forfeiture actions are unique in that they are the only proceedings where the government may confiscate private property on a mere showing of probable cause. For this court to eliminate the right of appeal, the most important safeguard against abuse, is indeed a drastic step.

I do not assert that such an unfair result is without parallel. I do urge, however, that deprivation of important, indeed fundamental, rights because of impecuniousness alone should rest on compelling imperatives and not on sophistical hair-splitting.

### 2.

The United States initiated this proceeding in the United States District Court for the Southern District of Florida and thereby invoked the jurisdiction of a court of the United States. The majority holds that the United States can thereafter take the forfeited chattel out of the district and thereby defeat the jurisdiction of a United States court because of the United States court's inability to enforce a judgment against the United States.

It is not asking too much of courts to suggest that their decisions, whenever possible, should harmonize with ordinary common sense. With deference to my esteemed colleagues in the majority, their decision fails to do so.

### 3.

The majority's analysis is flawed because the majority misreads binding precedent and misapplies principles of admiralty law in this forfeiture case. Because I believe we have had *in personam* jurisdiction over the United States from the instant the government invoked the jurisdiction of the federal courts to initiate the forfeiture proceedings, I dissent from the majority's dismissal of this appeal.

As Judge Clark's dissent points out, the majority's reasoning that removal of the *res* from the district destroyed this court's jurisdiction to hear claimant's appeal is based on a withering legal fiction in admiralty law that personified the ship. The traditional approach conceived of the ship as "the offending thing," which allowed actions directly against the ship. *See* G. Gilmore & C. Black, *The Law of Admiralty* 589–94 (2nd ed. 1975). The fiction of a ship's personality began as a literary theme, and reached a height of popularity near the turn of the century. *Id.* at 616. The fiction has been criticized severely during the past thirty years.[1] The Supreme Court has noted that it has been attacked as archaic, irrational, atavistic and an animistic survival from remote times. *Continental Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 23, 80 S.Ct. 1470, 1473, 4 L.Ed.2d 1540 (1960).

The majority's resort to this legal fiction as a principle of decision to resolve this appeal is disturbing enough. *See* G. Gilmore & C. Black, *supra*, at 616. But to utilize a defective legal fiction to essential-

---

1. Since World War II the courts and commentators have been in comfortable agreement that the personification of the ship is and always has been merely a legal fiction, is not and never has been a principle of deci-

sion. Abandonment of the fiction would seem to have been a clear gain for legal thought.

G. Gilmore & C. Black, *The Law of Admiralty* 616 (2nd ed. 1975) (footnote omitted).

ly cut off any right of appeal for appellant is inexcusable. *See supra* Part 1.

As the doctrine of personification of the ship loses force, so should the rules which rest on it. G. Gilmore & C. Black, *supra*, at 804–05. Among the many such rules which courts have begun to jettison is the rule that the presence of the *res* within the jurisdiction of the court is an absolute prerequisite to the court's jurisdiction. *See Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel (Treasure Salvors I)*, 569 F.2d 330, 334 & n. 4 (5th Cir.1978); 7A J. Moore & A. Pelaez, *Moore's Federal Practice* ¶ E.05, at E–203, E–207 (3rd ed. 1983); *see also United States v. An Article of Drug*, 725 F.2d 976, 982 (5th Cir.1984) (in recent years Fifth Circuit has allowed certain *in rem* actions to continue despite absence of the *res*); *cf. Trans-Asiatic Oil Ltd. v. Apex Oil Co.*, 804 F.2d 773, 779 (1st Cir.1986) (court's jurisdiction in maritime attachment proceeding is not wholly circumscribed by the presence and amount of the attachment).

The majority compounds the problem by misapplying an already shaky admiralty rule to the facts of this case. The jurisdictional issue in this case involves the United States, not the claimant Leybda. The plaintiff United States, after initially invoking the jurisdiction of the federal courts and then removing the *res* from the district, now claims lack of subject matter jurisdiction in order to defeat claimant's attempt to appeal to this court. This is the exact opposite of what usually occurs in *in rem* cases, where the defendant ship stealthily absconds from port and leaves the plaintiff with no *res* from which to collect. In the usual *in rem* case the issue then becomes whether the plaintiff may establish *in personam* jurisdiction of the owner of the *res* once the *res* has been removed from the district. *See, e.g., Taylor v. Tracor Marine, Inc.*, 683 F.2d 1361, 1362 & n. 2 (11th Cir.1982), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983); *Treasure Salvors I*, 569 F.2d at 333–35;

*Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148, 1151–52 (5th Cir.1977). In this case the issue is whether the defendant may establish *in personam* jurisdiction over the instigator of the *in rem* action, the plaintiff.

The question almost answers itself. Because it is rare that the plaintiff commencing an action *in rem* turns around and contests the jurisdiction of the court, there is little authority directly on point. In *Treasure Salvors I* the United States intervened in an action for confirmation of title to the sunken wreck of a 17th Century Spanish vessel. The government also counterclaimed and asserted title to the wreck. The Fifth Circuit held that by intervening in the plaintiff's *in rem* action and filing a counterclaim asserting a property right in the underwater *res*, the United States waived the requirement that the *res* be present in the territorial jurisdiction of the court. 569 F.2d at 335.

In this case the United States has done more than intervene in an existing *in rem* action. The United States instigated the action.[2] Having submitted itself to the jurisdiction of the court, the government should not be allowed to escape "through its subsequent jurisdiction exceptions" to claimant's appeal. *Savas v. Maria Trading Corp.*, 285 F.2d 336, 341 (4th Cir.1960). Indeed in other cases the government has argued successfully that it has personal jurisdiction over the owner of the *res* even after the *res* has disappeared. *See, e.g., United States v. Articles of Drug*, 818 F.2d 569, 571 (7th Cir.1987).

The Fifth Circuit in *Inland Credit Corp.* faced an almost identical issue. In that case the plaintiff, having received the proceeds of the sale of defendant ship, argued that the court lacked jurisdiction to hear the appeal of two intervenors who were denied a share of the proceeds by the district court. The court rejected the plaintiff's argument, noting that it amounted to the proposition that there can be no appeal

---

**2.** The majority states that the government did not intervene in this case, it *"merely* brought a forfeiture action." With due respect I think the

majority has it backwards. I consider bringing an action just as jurisdictionally significant as intervening into an existing one, if not more so.

from a distribution order once the proceeds have been disbursed. 552 F.2d at 1151. The court explained that it had *in personam* jurisdiction over the plaintiff because the plaintiff "by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court...." *Id.* at 1152 (quoting *Adam v. Saenger*, 303 U.S. 59, 67–68, 58 S.Ct. 454, 458, 82 L.Ed. 649 (1938)). The United States in this case similarly has submitted itself to the jurisdiction of the court by demanding justice from the defendant in this forfeiture action.[3]

The majority places particular emphasis on *L.B. Harvey Marine, Inc. v. M/V "RIVER ARC"*, 712 F.2d 458 (11th Cir.1983), and *Taylor v. Tracor Marine, Inc.*, 683 F.2d 1361 (11th Cir.1982), *cert. denied* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983), concluding that these cases "control the result in the case at bar." In addition to the distinguishing features noted in Judge Clark's dissent, I consider it particularly important that the cases relied on by the majority involved the converse of the issue in this case. In *Harvey Marine* the ship had left the jurisdiction and the plaintiff-appellant was trying to assert jurisdiction over the ship's owners. *See* 712 F.2d at 458–59. In *Taylor* the *res* had been distributed and the plaintiff-appellant was trying to assert a similar jurisdictional claim. 683 F.2d at 1362.[4] Neither case had anything to do with the court's jurisdiction over the *plaintiff*. Thus these cases are distinguishable, if not wholly inapplicable.[5]

An admiralty court should not be hampered in its efforts to reach substantial justice by inexorable rules invoked by the parties. *Mosher v. Tate*, 182 F.2d 475, 479 (9th Cir.1950) (quoting *The Minnetonka*, 146 F. 509 (2nd Cir.1906)). Admiralty rules should not be construed in a hypertechnical manner to frustrate their adjudicative purpose. *Trans–Asiatic Oil*, 804 F.2d at 779. The admiralty cases in the Fifth and other circuits are characterized by an "interest in rendering justice rather than an automatistic reliance upon rigid legalisms...." *Treasure Salvors I*, 569 F.2d at 334.

The majority today violates these principles by resuscitating an anachronistic and conceptually flawed rule of admiralty, and applying it to a modern forfeiture action where it does not belong. I would take this in banc opportunity to rid this circuit of this dated jurisdictional jetsam, and hold that we have jurisdiction to hear this appeal. I therefore dissent.

CLARK, Circuit Judge, dissenting, in which ANDERSON, Circuit Judge, joins:

Through a rigid application of principles to which this court has previously refused to adhere blindly, the court divests itself of jurisdiction in this cause. Binding precedent compels the conclusion that the court is obligated to hear this appeal.

The majority's argument that the court has lost *in rem* jurisdiction is predicated upon the admiralty fiction that a ship is a person against whom suits can be filed and judgments entered. The admiralty fiction

---

3. The majority misreads the *Inland Credit* opinion, or at least does not read all of it. The majority reasons that because the plaintiff Inland Credit filed suit both *in rem* and *in personam*, the court continued to have jurisdiction over the ship's owner even after the *res* had been distributed. Therefore, the majority concludes, because the United States "never invoked *in personam* jurisdiction [over Leybda, the owner of the airplane] when it brought suit," the court lost jurisdiction once the *res* was removed from the district.

The issue in this case, however, is not what kind of jurisdiction exists over the *defendant* owner of the *res*, but what kind of jurisdiction exists over the plaintiff United States. The sentence quoted by the majority from the *Inland*

*Credit* opinion does not address this issue. A subsequent sentence does: "[I]t is undeniable that Inland is subject to this Court's *in personam* jurisdiction." 552 F.2d at 1152.

4. It is actually unclear over what or whom the plaintiff in *Taylor* was trying assert jurisdiction. The court noted that jurisdiction might still lie had the case involved *in personam* claims over the ship owner. 683 F.2d at 1362 n. 2.

5. In both *Harvey Marine* and *Taylor* the *res* was literally gone, its location either unknown or its existence terminated. In this case the government has the *res* and it is sitting in a facility in Missouri.

permits actions to be filed against a vessel when the owner cannot be reached with service of process. It also restrains removal of a mobile vessel whose owner might wish to escape payment of debts incurred in port. Even in the admiralty context, however, the vitality of the rule has been questioned. In *Continental Grain Company v. The Barge FBL–585,* 364 U.S. 19, 23–24, 80 S.Ct. 1470, 1473, 4 L.Ed.2d 1540 (1960), the Supreme Court held that an action which had been brought *in rem* and *in personam* could be transferred on *forum non conveniens* grounds to a district where the action could not have been brought *in rem.* The Court, explaining the exception it had created, said that "[a] purpose of the fiction, ... has been to allow actions against ships where a person owning the ship could not be reached, and it can be very useful for this purpose still." But this fiction should not "be transferred into a weapon to defeat that very purpose." This court has previously interpreted *Continental Grain* as evidencing a Supreme Court preference for the "position that the presence of the *res* within the district is not an absolute prerequisite to the court's jurisdiction." *Treasure Salvors v. Unidentified Wrecked and Abandoned Sailing Vessel,* 569 F.2d 330, 334 (5th Cir.1978), *citing with approval,* 7A *Moore's Federal Practice* ¶ E.05 at E203–06 (1977)[1]; G. Gilmore & C. Black, *The Law of Admiralty* 616 (2d ed. 1975).[2]

This view, that the admiralty fiction of personality should not be used to frustrate the adjudication of lawsuits, has been instrumental in the development of exceptions to the traditional admiralty *in rem* rule in both admiralty and forfeiture cases. As the Fifth Circuit has explained,

in recent years this court [in cases binding on the Eleventh Circuit] has shied away from a strict construction of this *in rem* rule, and has allowed, in certain circumstances, an *in rem* action to continue despite the absence of the *res. Specifically,* we have dispensed with strict application of this *in rem* rule *when a legal fiction which exists solely to effectuate the adjudication of disputes is invoked for the opposite purpose, and we have found a substitute basis of* in personam *jurisdiction.*

*United States v. An Article of Drug Consisting of 4,680 Pails,* 725 F.2d 976, 982 (5th Cir.1984) (emphasis added).

We first dispensed with strict construction of this *in rem* rule in *Inland Credit Corp. v. M/T Bow Egret,* 552 F.2d 1148 (5th Cir.1977), where a ship mortgagee brought suit *in rem* against the vessel and *in personam* against its owner to foreclose on its mortgage. Under a court order, the vessel was sold and the proceeds were distributed to various creditors. Two creditors not sharing in the distribution appealed the decision not to include them. As with the claimant in this case, these creditors had failed to seek a stay of execution. Because the *res* had been distributed, the mortgagee argued that jurisdiction over the matter had been destroyed. Judge Tuttle explained that

a strict construction of the limits of *in rem* actions might bar any appeal of an *in rem* action unless supported by continued *in rem* jurisdiction. This narrow view of our jurisdiction, however, is difficult to square with the modern view, now almost a cliche, that *in personam* jurisdiction can be asserted *whenever the defendant has those minimum contacts with the forum state that will satisfy*

---

**1.** Professor Moore notes that *Continental Grain* may be persuasive authority for concluding that, with consent of a vessel's owners, *in rem* process can be effectively served in a district in which the vessel is not physical situated and that consent or a general appearance by the vessel's owner will be sufficient to give the court jurisdiction over the cause.

7A *Moore's Federal Practice,* ¶ E.05 at E206. *See also Reed v. Steamship Yaka,* 307 F.2d 203, 205 (3d Cir.1962) ("voluntary appearance of the

claimant to respond to the libel on its merits ... was an equivalent and equally effective undertaking that its interest in the ship should be subject to the authority of the court") (cited with approval in *Treasure Salvors,* 569 F.2d at 334.).

**2.** Professors Gilmore and Black note that the "fiction of a ship's personality has never been much more than a literary theme" and that "it is not and never has been a principle of decision." Gilmore & Black, *The Law of Admiralty* at 626.

" 'traditional notions of fair play and substantial justice.' "

552 F.2d at 1152. (emphasis added) (citations omitted).[3] While reluctant to decide whether its holding had "critically shaken" the "philosophical underpinnings of the system of *in rem* jurisdiction in admiralty," the court found that being "at the interface of *in rem* and *in personam* jurisdiction" enabled it to "properly exercise a broad *in personam* power." 552 F.2d at 1152 (citations omitted).

The next case in which this court was presented with such an "interface of *in rem* and *in personam* jurisdiction," *see An Article of Drug*, 725 F.2d at 983, was *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330 (5th Cir.1978). In *Treasure Salvors*, a Florida corporation sued for possession of and confirmation of title to a vessel located outside the territorial waters of the United States. The United States, intervenors in the district court, appealed summary judgment in favor of the plaintiffs, arguing that the district court lacked *in rem* jurisdiction to determine the rights of the parties.

We noted the "common concern of the courts" which had treated related issues "with finding the most practical and efficacious means of resolving disputes before them." We noted further that their decisions demonstrated "[a]n interest in rendering justice rather than an automatistic reliance upon rigid legalisms." 569 F.2d at 334.[4] The court held that although no party had brought an *in personam* claim, the United States, by intervening in the action as a party defendant/claimant and by stip-

ulating to the district court's admiralty jurisdiction, had "waived the usual requirement that the *res* be present." *Id.* at 335.

In a more recent case, decided under the seizure and forfeiture component of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, the Fifth Circuit again held that *in personam* jurisdiction over the parties existed even though no party had filed an *in personam* claim. *An Article of Drug, supra.* The United States sought the forfeiture of a drug that it claimed had not met the requirements specified by the Act. Upon judgment for the drug's manufacturer, which had intervened as a claimant, the United States Marshal released the drug to the manufacturer.[5] The United States, although it had not requested a stay of execution or an order seeking return of the *res*, filed a motion for a new trial which was granted. The manufacturer moved to dismiss the complaint for lack of *in rem* jurisdiction following the removal of the drug from the district; this motion was denied. The United States' motion for summary judgment in the new trial was granted.

The Fifth Circuit explained that *Treasure Salvors* and *Inland Credit* permit the court to find a "substitute basis of *in personam* jurisdiction" when the fiction of personality is invoked for a purpose inconsistent with its true purpose, namely, the adjudication of lawsuits. 725 F.2d at 982. The "substitute basis" of *in personam* jurisdiction stemmed primarily from the fact that, after the release of the *res*, the manufacturer voluntarily appeared before the district court for a number of reasons, in-

**3.** In spite of the majority's assertions to the contrary, a close examination of this language reveals that these principles are in no way limited to cases in which the party initiating an action files claims *in personam*.

**4.** The court referred to these decisions: *Continental Grain, supra* (action brought *in personam* and *in rem* could be transferred on forum non conveniens grounds to district where no *in rem* jurisdiction existed); *Steamship Yaka, supra* (voluntary appearance by claimant resulted in waiver of the requirement that the *res* be present); *Booth Steamship Co. v. Tug Dalzell No. 2*, 1966 A.M.C. 2615 (S.D.N.Y.1966) (even though *res* was absent from district, claimant

submitted vessel to court's jurisdiction by filing claim, alleging vessel's presence, and making a general appearance). *See also The Fairisle*, 76 F.Supp. 27, 34 (D.Md.1947) (vessel owners appearing in *in rem* action to contest plaintiffs' claim "may be equitably treated as if they had been brought into court by personal process"), cited with approval in *Mosher v. Tate*, 182 F.2d 475 (9th Cir.1950).

**5.** Although the drug was released in violation of the automatic ten-day stay provision of Fed.R. Civ.P. 62(a), this was not a factor in the court's decision.

cluding its opposition to the government's motion for a new trial. *Id.* at 984.

Here, the facts are much the same. On October 21, 1985, seventeen days after the government took the plane to Missouri, it filed various papers in the district court, including a memorandum opposing Leybda's motion for a new trial. Under the majority's and the government's view, the government should have argued that removal of the *res* destroyed the district court's jurisdiction. Indeed, under this view, the government was not entitled to receive a new trial in *An Article of Drug.* The government cannot have it both ways. Here, the government's continued participation in post-judgment and post-removal proceedings further supports the conclusion that a substitute basis of *in personam* jurisdiction exists in this case. *An Article of Drug,* 725 F.2d at 984.

As the facts in *An Article of Drug* show, a strict adherence to the government's position would lead to absurd results. The district court did not lose its power to order a new trial even though the aircraft was no longer in the jurisdiction. Indeed, by opposing Leybda's motion for a new trial without challenging the court's jurisdiction, the government recognized the court's continuing jurisdiction and its power to order the return of the aircraft. The majority acknowledges that *An Article of Drug* is factually indistinguishable from this case, yet declines to follow it because "precedent in this Circuit does not support [its] holding." Maj. op. at n. 5. A careful review of *An Article Drug* demonstrates plainly that it is well supported by prior decisions which are binding on this court. The majority simply refuses to acknowledge the substantial limitations which this court, and others, have placed on the traditional *in rem* rule. Having voluntarily invoked the jurisdiction of the district court, the government cannot complain about remaining subject to this court's jurisdiction for all purposes

that justice requires. *Adam v. Saenger,* 303 U.S. 59, 67–68, 58 S.Ct. 454, 458, 82 L.Ed. 649 (1938), *quoted in Inland Credit,* 552 F.2d at 1152.[6]

The majority relies on two recent decisions of this court, *L.B. Harvey Marine, Inc. v. M/V River Arc,* 712 F.2d 458 (11th Cir.1983), and *Taylor v. Tracor Marine, Inc.,* 683 F.2d 1361 (11th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983), in which we applied the traditional admiralty *in rem* rule. In both these cases, we dismissed as moot admiralty appeals because the vessels in question were no longer within the court's jurisdiction. Both cases are distinguishable. In *Harvey Marine,* a ship was arrested by the district court pursuant to a creditor's claim of a maritime lien. After a post-seizure hearing, the court dissolved the warrant of arrest. The ship, which had been scheduled to leave port on the same day the court dissolved the warrant, did so. We dismissed the appeal because no court could *"proceed* to adjudication" once the vessel had left the territorial jurisdiction. 712 F.2d at 459. The vessel's departure was due to the dissolution of the arrest warrant, not any act of the parties.

In *Taylor,* crew members brought an action *in rem* against a vessel to obtain payment of past wages. The vessel was sold and the proceeds were distributed to priority lienholders. We dismissed the claim as moot since the *res* was no longer in the jurisdiction. We noted, however, that if the case had "also involved claims in personam, jurisdiction might still lie." 683 F.2d at 1362 n. 2 (citing *Treasure Salvors, supra,* and *Inland Credit Corp., supra* ). Here, because we are "presented with an interface of *in rem* and *in personam* jurisdiction," *An Article of Drug,* 725 F.2d at 983, and because the government is retaining exclusive possession of the plane, *Taylor* and *Harvey Marine* do not apply.

---

**6.** The majority's elaborate effort to distinguish *Adam v. Saenger* is totally unavailing. *Inland Credit* did not cite *Adam* for its holding, but for the equitable principle that a party cannot, under a given set of circumstances—here the absence of the *res*—acknowledge a court's juris-

diction and then, without a change in these circumstances, contend that the court's jurisdiction has vanished. That this court has fully adopted such a principle is clear from the discussion in *Treasure Salvors.*

The majority also relies on those cases that hold it is "incumbent upon [claimant] to obtain a stay of the district court's judgment if he desired to preserve jurisdiction for an appeal." *United States v. $57,480.05 United States Currency*, 722 F.2d 1457, 1459 (9th Cir.1984); *see also United States v. 66 Pieces of Jade And Gold Jewelry*, 760 F.2d 970, 973 (9th Cir.1985). We relied on similar cases in *Harvey Marine*, but only to conclude that where the traditional admiralty *in rem* rule does apply, it does not work to deny fundamental fairness to the complaining party. 712 F.2d at 459. The presence of the substitute basis of *in personam* jurisdiction is sufficient to distinguish these cases.

Yet a rigid application of Fed.R.Civ.P. 62's provisions poses substantial problems if the court refuses to acknowledge the presence of *in personam* jurisdiction. In other types of proceedings, when a judgment for property is rendered, the losing party has a choice. He need not post a bond. He can still appeal the judgment. If he wins on appeal, he can bring an action to recover his property or its value. The rule established by the court today enables the United States to defeat the right to appeal a forfeiture judgment for mobile property if the losing party has insufficient funds to post a bond. Where the subject property is a jet aircraft, the security required to post such a bond is no small sum. The harshness of the Circuit's new rule is fully demonstrated in this case where, as the government acknowledged, "Leybda ha[d] no assets other than the Lear Jet." United States' Mem. in Opp. to Claimant's Motion for Attorney's Fees and Costs, Rec. Vol. 10, Tab 352 at 5 n. 1.

I respectfully dissent.

**EDMONDSON, Circuit Judge, dissenting:**

The idea that, when a plaintiff comes into a court system requesting the courts' assistance in resolving a case, the plaintiff submits its person to the jurisdiction of those courts until the case is finally concluded seems to me to be neither innovative nor unfair. I agree with Judge Vance when he says that "we have had in personam jurisdiction over the United States from the instant the government invoked the jurisdiction of the federal courts to initiate the forfeiture proceeding." I would affirm the judgment of the District Court.