**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**ONE LOT OF $25,721.00 IN
CURRENCY, Defendant,
Appellee,**

**John Mele, Claimant, Appellant.**

**Nos. 90–1688, 90–2170.**

United States Court of Appeals,
First Circuit.

Heard April 5, 1991.

Decided July 16, 1991.

Kevin S. Nixon with whom Henry F. Owens, III and Owens & Associates were on brief, Boston, Mass., for claimant, appellant.

Christopher F. Bator, Asst. U.S. Atty., with whom Roberta T. Brown, Asst. U.S. Atty. and Wayne A. Budd, U.S. Atty., were on brief, Boston, Mass., for appellee.

Before BREYER, Chief Judge,
BOWNES, Senior Circuit Judge, and
TORRUELLA, Circuit Judge.

BOWNES, Senior Circuit Judge.

This is a civil forfeiture case. Claimant-appellant John Mele appeals from a summary judgment awarding the government $25,721 in United States currency.[1]

There are three issues: (1) whether we have jurisdiction to hear the appeal; (2) whether the district court abused its discretion in denying claimant's motion for relief of judgment invoking Fed.R.Civ.P. 60(b)(1) and (b)(6); and (3) whether the government's motion for summary judgment was properly granted.

## I. JURISDICTION

In a recent case we evaded the question of jurisdiction. *United States v. Parcel of Land With Building, Appurtenances and Improvements, Known as Woburn City Athletic Club, Inc.*, 928 F.2d 1, 3–4 (1st Cir.1991). The time has now come to bite the bullet. We start our bite with the pertinent facts. A final judgment as to the currency was entered by the district court on May 23, 1990. There was no attempt by claimant to obtain a stay of judgment. On June 13, 1990, more than ten days after the expiration of the automatic ten-day stay of execution mandated by Fed.R.Civ.P. 62(a), the United States Marshal executed the judgment and deposited the currency in the United States Department of Justice Asset Forfeiture fund.

The government's position, if followed, would easily and quickly dispatch the case. It asserts that the execution of the judgment has two inevitable and unalterable results: it deprives the district court of jurisdiction to grant claimant relief from judgment under Fed.R.Civ.P. 60(b); and it extinguishes appellate jurisdiction.

■ We must acknowledge that the government has followed the generally accepted civil forfeiture procedure, which is based on the ancient admiralty rule that where the *res* has been removed from the jurisdiction of the court, there is no *in rem* jurisdiction. *See United States v. One Lear Jet Aircraft, Ser. No. 35A–280*, 836 F.2d 1571, 1573 (11th Cir.), *cert. denied*, 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988). The theory is that because a civil forfeiture action is an action *in rem*, not *in personam*, jurisdiction of the court depends on its control over the *res*. *United States v. Tit's Cocktail Lounge*, 873 F.2d 141, 143 (7th Cir.1989); *United States v. $2,490.00 in U.S. Currency*, 825 F.2d 1419, 1420 (9th Cir.1987). A claimant can keep the *res* within the control of the district court by obtaining a stay of the district court judgment pending appeal; this requires the posting of a supersedeas bond under Fed.R.Civ.P. 62(b). *See United States v. $2,490 in U.S. Currency*, 825 F.2d at 1420; *United States v. 66 Pieces of Jade & Gold Jewelry*, 760 F.2d 970, 973 (9th Cir.1985). As noted, no stay was sought here.

The Seventh, Ninth, Eleventh and Fifth Circuits follow the rule that where there has been no stay of the judgment, executing it removes the *res* from the control of the court and jurisdiction in both the district and appellate courts is extinguished. *See United States v. Tit's Cocktail Lounge*, 873 F.2d at 142–43 (failure to obtain stay and sale of properties after forfei-

---

1. We have some difficulty with the arithmetic of the claimed forfeited sum. The return of the search warrant shows $1,500 in United States currency as being seized from under a sofa in the living room, $20,750 seized from a bedroom safe and $3,075 seized from a water bottle in the bedroom. This totals $25,325. The warrant return also shows "assorted coin in box" with no amount indicated. Claimant states that $23,-825 was seized from his premises and $1,882 seized from his person. This totals $25,707. There is no mention in the warrant return of any money being seized from the person of claimant.

ture divests court of appellate jurisdiction); *United States v. Ten Thousand Dollars in U.S. Currency,* 860 F.2d 1511, 1513 (9th Cir.1988) ("in an *in rem* action, removal of *res* ends the jurisdiction of the court"; judgment had been executed and cash released to government); *United States v. One Lear Jet Aircraft,* 836 F.2d at 1573 (no stay of judgment, removal of forfeited plane from territorial jurisdiction of court destroyed court's jurisdiction); *United States v. $79,000 in U.S. Currency,* 801 F.2d 738, 740 (5th Cir.1986) (no stay, monies released to Customs ten days after judgment—no jurisdiction).

The Second and Fourth Circuits have refused to sail by the admiralty rule. The decisions in both of these circuits rely heavily on the dissents in *One Lear Jet Aircraft,* 836 F.2d at 1577–1584, particularly that of the late Judge Vance. *One Lear Jet Aircraft* was an *en banc* opinion, decided on a six to five vote. We, therefore, first examine the dissents in that case. Judge Vance's main theme was that it was unfair "to utilize a defective legal fiction to essentially cut off any right of appeal...." *Id.* at 1578–79. He pointed out: "Forfeiture actions are unique in that they are the only proceedings where the government may confiscate private property on a mere showing of probable cause. For this court to eliminate the right of appeal, the most important safeguard against abuse, is indeed a drastic step." *Id.* at 1578. Judge Clark attacked the majority's application of a rule "predicated upon the admiralty fiction that a ship is a person against whom suits can be filed and judgments entered." *Id.* at 1580. He pointed out that even in admiralty cases the rule had lost much of its vitality and exceptions had been developed for the use of *in personam* jurisdiction. *Id.* at 1580–82. Both judges were of the opinion that the court had *in personam* jurisdiction over the United States. *Id.* at 1578 (Vance); *Id.* at 1583 (Clark).

In *United States v. Aiello,* 912 F.2d 4 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 757, 112 L.Ed.2d 777 (1991), the Second Circuit adopted the position of the dissenters in *One Lear Jet.* It held that the admiralty fiction of treating a ship as a person should not be invoked to deny appellate review of forfeiture judgments. It also agreed with Judge Vance that by bringing suit the United States submitted itself to the jurisdiction of the court and should not be allowed to evade appellate review. *Id.* at 6–7.

The Fourth Circuit has wholeheartedly embraced the position of the dissenters in *One Lear Jet.* It held:

> We conclude that invocation of the *in rem* rule is particularly inapposite to defeat jurisdiction in a government-initiated civil forfeiture action. As noted by Judge Vance in *One Lear Jet,* "[f]orfeiture actions are unique in that they are the only proceedings where the government may confiscate ... to [then] eliminate the right of appeal, the most important safeguard against abuse, is indeed a drastic step." 836 F.2d at 1578 (Vance, J., dissenting). Unlike the typical case where the defendant ship stealthily absconds from port and leaves the plaintiff with no *res* from which to collect, here the defendant *res* is in the possession of the United States and thus in no danger of disappearing. Because the *res* is unlikely to disappear, we see no reason to require the claimant to file a stay of execution or a supersedeas bond in a civil forfeiture action, because such bonds are typically filed to protect the interests of the party that prevailed in the district court. Having prevailed below, the government, if it wins on appeal, is assured of execution regardless of whether [the claimant] files a bond or stays execution of the judgment.

*United States v. $95,945.18, U.S. Currency,* 913 F.2d 1106, 1109 (4th Cir.1990) (footnotes omitted). The Fourth Circuit also agreed with the dissenters in *One Lear Jet,* "that by initiating the forfeiture proceeding in the district court, the government has subjected itself to this court's *in personam* jurisdiction." *Id.*

We are persuaded by the dissenters in *One Lear Jet* and the Second and Fourth Circuits that the time has come to jettison the "no *res,* no jurisdiction" rule. There is no good reason why the government should

be allowed to insulate itself from the appellate process by wrapping itself in the mantle of an admiralty fiction designed at an earlier time to meet a problem totally unrelated to present day civil forfeiture proceedings. Jurisdiction based on the location of the *res* is particularly inapposite to a currency forfeiture case. The government has possession and control of the currency from the time it seizes it. The execution of the judgment merely transfers it from one government pocket to the other. Basing jurisdiction on what pocket contains the currency is nothing more than a shell game. In addition to being bereft of logic it is also unfair. As Judge Clark pointed out in *One Lear Jet:* "In other types of proceedings, when a judgment for property is rendered, the losing party has a choice. He need not post a bond. He can still appeal the judgment. If he wins on appeal, he can bring an action to recover his property or its value." 836 F.2d at 1584.

In *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), the Court did not hesitate to deep-six this admiralty fiction when it was used to thwart the doctrine of *forum non conveniens:*

> The fiction relied upon has not been without its critics even in the field it was designed to serve. It has been referred to as "archaic," "an animistic survival from remote times," "irrational" and "atavistic." Perhaps this is going too far since the fiction is one that certainly had real cause for its existence in its context and in the day and generation in which it was created. A purpose of the fiction, among others, has been to allow actions against ships where a person owning the ship could not be reached, and it can be very useful for this purpose still. We are asked here, however, to transplant this ancient salt-water admiralty fiction into the dry-land context of *forum non conveniens*, where its usefulness and possibilities for good are questionable at best. In fact, the fiction appears to have no relevance whatever in a District Court's determination of where a case can most conveniently be tried. A

> fiction born to provide convenient forums should not be transferred into a weapon to defeat that very purpose.

*Id.* at 23, 80 S.Ct. at 1473 (footnote omitted).

For the foregoing reasons we hold that in a currency forfeiture case the government has subjected itself to the court's *in personam* jurisdiction and execution of the judgment by the government does not extinguish appellate jurisdiction if a timely appeal has been filed and the filing of a timely appeal makes the filing of a request for a stay of the district court judgment and the posting of a supersedeas bond unnecessary for jurisdictional purposes. We turn to the merits.

## II. THE MERITS

The procedural path of this case is long but relatively straight. It begins with claimant John Mele's arrest on November 5, 1987, by Massachusetts law enforcement officials for trafficking in cocaine. At the time of his arrest Mele was carrying several ounces of cocaine and $1,887 in United States currency. On November 6, 1987, a Massachusetts state police officer, James R. White, obtained from state authorities a search warrant for Mele's residence. The warrant was executed the same day; during the search the currency which is the focus of the case was seized. Mele retained Attorney John McBride to represent him in November 1987. Massachusetts transferred the currency to the United States Drug Enforcement Administration some time after it had been seized. The DEA informed Mele by letter dated February 4, 1988, that the currency had been seized and what he had to do to contest the forfeiture. Attorney John McBride sent a letter to the DEA on February 28, 1988, informing it that he represented Mele and enclosing a certified check in the amount of $2,571 as a bond on the claim.

In August of 1988, Mele retained Attorney Steven J. Topazio to represent him. On October 12, 1988, the United States filed a forfeiture complaint against the currency. The district court found probable

cause for seizure and issued a warrant and motion on October 13, 1988. On October 28, 1988, Attorney Topazio filed a claim to the currency and on November 4, 1988, filed an answer to the complaint. On July 21, 1989, Mele pled guilty in state court and was sentenced to ten years incarceration. He began serving his sentence on the date of sentencing.

On February 28, 1990, the government moved for summary judgment with a supporting memorandum. No opposition was filed. On April 6, 1990, Attorney Topazio withdrew as counsel, stating: "I was removed as attorney of record by John Mele to represent him in this matter." He also stated: "It is my understanding that the law offices of John L. McBride was the successor counsel to Mr. Mele." The district court granted summary judgment for the government on May 22, 1990; judgment was entered the next day. As noted in part I of this opinion, the judgment was executed on June 13, no stay having been sought.

On July 17, 1990, Mele filed a pro se notice of appeal from the summary judgment. The appeal was timely. On September 11, 1990, Mele filed a pro se motion for relief from judgment. The government filed an opposition which both contested the court's jurisdiction to hear the motion and addressed the merits. Mele's motion for relief from judgment was denied without opinion by the district court on October 10. Mele appealed from the denial; both appeals were consolidated for hearing by this court.

 Claimant's main line of attack on the summary judgment is that the failure to oppose it was the result of excusable neglect and misrepresentations by his attorney. The standard of review of a district court's denial of a motion for relief from judgment brought pursuant to Fed.R. Civ.P. 60(b) is abuse of discretion. *United States v. Parcel of Land with Bldg., App. and Imp.*, 928 F.2d at 5; *Ojeda–Toro v. Rivera–Mendez*, 853 F.2d 25, 28 (1st Cir. 1988); *United States v. Berenguer*, 821 F.2d 19, 20 (1st Cir.1987); *Lepore v. Vidockler*, 792 F.2d 272, 274 (1st Cir.1986). In order to be entitled to relief under Rule 60(b) claimant must show that there was a good reason for the default and that he has a meritorious defense. *United States v. Proceeds of Sale of 3,888 Pounds of Atlantic Sea Scallops*, 857 F.2d 46, 48 (1st Cir. 1988).

We first determine whether there was a good reason for claimant's failure to oppose the summary judgment motion. Many of the facts on which claimant relies come from his own affidavits and statements. There are, however, certain facts revealed by the pleadings about which there can be no dispute. The government filed and served its motion for summary judgment on February 28, 1990. At that time, claimant was represented by Attorney Topazio, who was served a copy of the motion. Under Local Rule 17(a)(2) of the Massachusetts district court, opposition to the motion had to be filed within fourteen days. Topazio filed a notice of withdrawal on April 11, 1990, but never filed an opposition to the motion or asked for an extension of time to do so. No reason is given for Topazio's failure to reply to the motion for summary judgment.

Claimant asserts in an affidavit dated September 5, 1990, that "on or about the second week of March, 1990," he contacted Attorney Topazio on an unrelated matter and was informed by him of the motion for summary judgment. According to the claimant, Topazio also told him that he no longer wished to represent him and that if claimant wished, Topazio would contact Attorney Paul E. Morton of Boston "to inquire about his interest in becoming counsel in the matter." Claimant further alleges that Topazio also stated,

that he had called the Plaintiff's attorney, explained the situation to him/her (I do not know who he talked to), and said, that he had reached an understanding that the United States of America would not proceed with their summary judgement motion until the claimant's counsel situation was resolved.[2]

2. The government denies that any such agreement was made.

Attached to claimant's affidavit is a letter from Attorney Morton to Attorney DiMasi (Topazio's partner) dated April 13, 1990, which states:

Salvatore DiMasi, Esquire
50 Beacon Street
Boston, MA 02108
Re: John Mele—Forfeiture
Dear Mr. DiMasi:

It was a pleasure speaking to you last week regarding the above-referenced case.

In examining the District Court Docket Sheet, I note that a Motion for Summary Judgment was filed by the U.S. Attorney on February 28, 1990. Inasmuch as the local rules require oppositions to summary judgment motions to be filed within fourteen (14) days, I could not consider representing Mr. Mele in this action unless and until an extension of time sufficient to allow us to meet with Mr. Mele and submit an opposition is obtained.

If such extension is obtained, please let me know and we will be pleased to meet with Mr. Mele and further evaluate the case.

I will look forward to hearing from you.

Very truly yours,
Paul E. Morton

It would appear that by the time Attorney Topazio (or his partner DiMasi) contacted Attorney Morton, the fourteen-day period for filing an opposition had already expired. The question, therefore, is whether the unexplained failure of Attorney Topazio to file an opposition to the government's motion for summary judgment would entitle claimant to relief under Rule 60(b). The court may relieve a party from a final judgment for: "mistake, inadvertence, surprise or excusable neglect." Fed. R.Civ.P. 60(b)(1).

■ In this circuit we have followed the teaching of the Court in *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962), that the acts or omissions of counsel are visited upon the client. *See United States v. Parcel of Land with Bldg., App. and Imp.*, 928 F.2d at 6. In another forfeiture case, also involving a Rule 60(b)(1) motion, we rejected the argument that a client should not suffer the attorney's sins. *United States v. 3,888 Pounds of Atlantic Sea Scallops*, 857 F.2d at 49. *See also Ojeda–Toro v. Rivera–Mendez*, 853 F.2d at 30 (parties bound by the acts of their attorneys).

■ We do not think that claimant should be penalized in any way for being incarcerated at the time the default occurred. Nor should he be given special consideration. He should be treated the same as any other claimant; he must bear the onus of his lawyer's neglect. We do not see how claimant's incarceration prevented or hindered his attorney from filing a timely opposition to the government's motion for summary judgment. We hold that the district court did not abuse its discretion in denying claimant's Rule 60(b) motion for relief from judgment.

Because we have found that the default judgment must stand, we need not determine whether claimant had a meritorious defense. We do observe, however, that none of the defenses advanced has much, if any, merit. Claimant admitted that he was a cocaine dealer and that he stole money and drugs from other drug dealers. He pled guilty in state court to the drug trafficking that was uncovered by the search of claimant's premises and the seizure of the defendant money, part of which claimant wants returned to him. The government certainly had shown probable cause to believe that the money seized at claimant's house and from his person was the proceeds of drug dealing. In light of the fact that claimant's principal income came from drug trafficking, it would be extremely difficult for him to prove that part of the money came from legitimate sources.

We do not see any basis for finding the search warrant invalid. And the claimant's plea for a *Franks* hearing is totally devoid of any factual or legal basis.

A claimant is not required to come into court with clean hands in a forfeiture proceeding but neither are we required to ignore the stains from drug dealing that are so clearly visible.

We have examined carefully the three affidavits that were filed to support the motion for summary judgment. Taken either singly or together the affidavits of DEA Special Agent Thomas L. Doud and Massachusetts State Police Trooper James R. White were a sufficient basis for the summary judgment.[3]

The forfeiture of the defendant money is affirmed.

No costs to the plaintiff or claimant.

**3.** The third affidavit, that of State Police Officer Robert Cox, merely states that Cox has read the affidavit of Agent Doud and that it is accurate.