Evelyn COTTO and Edwin Torres, etc.,
et al., Plaintiffs, Appellants,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 92–2440

United States Court of Appeals,
First Circuit.

Heard May 4, 1993.

Decided May 19, 1993.

Peter John Porrata, Hato Rey, PR, for plaintiffs, appellants.

Fidel A. Sevillano del Rio, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, PR, was on brief, for defendant, appellee.

Before SELYA, Circuit Judge, FEINBERG,* Senior Circuit Judge, and STAHL, Circuit Judge.

SELYA, Circuit Judge.

This appeal arises out of an action brought against the United States by family members and personal representatives of an injured minor under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680 (1990). Long after the district court dismissed the case, plaintiffs sought to revivify it but failed. Believing, as we do, that the district court appropriately rebuffed the attempted resurrection, we affirm the judgment below.

* Of the Second Circuit, sitting by designation.

## I. BACKGROUND

The incident that sparked this case occurred on December 13, 1987, when a small child, Alexis Agosto, caught his hand in a conveyer belt operated by an employee of the United States Department of Agriculture (DOA). On February 24, 1989, Agosto's parents and grandparents filed FTCA claims on Agosto's and their own behalf. On April 21, DOA responded, requesting medical records, itemized bills, and other details. Plaintiffs retained counsel. On November 29, 1989, their attorney notified DOA that he would supply pictures of Agosto's injured hand, apparently believing that the photographs would satisfy DOA's curiosity anent the extent of injury. He was wrong. DOA, unmollified, wrote to the lawyer on March 5, 1990, reiterating its need for the information previously requested and mentioning that plaintiffs' claim forms were incomplete. The letter also stated:

> Please bear in mind that the claims must be substantiated and that we must have the information requested before a determination can be made by [the appropriate official]. *No further action will be taken on these claims until the information requested has been received* (emphasis in original).

Instead of submitting further particulars, plaintiffs brought suit. They alleged, *inter alia*, that "[n]o affirmative action as to any settlement or responsibility has been taken by [DOA], although a copy of the medical record has been provided to them [sic]." This allegation was seemingly an endeavor to show that, despite the lack of an explicit denial, DOA had implicitly denied plaintiffs' claim, thus satisfying the FTCA's exhaustion requirement. *See* 28 U.S.C. § 2675(a).

The government answered the complaint, asserting *inter alia* that plaintiffs had yet to file a substantiated, completed administrative claim, and, therefore, had not exhausted their administrative remedy. On August 27, 1990, a magistrate judge stayed proceedings for ninety days to allow plaintiffs a final opportunity "to provide defendant's claim specialist with the necessary documentation so that defendant may either accept or reject the

claim." The stay proved unproductive. On November 28, 1990, the magistrate convened the next scheduled conference, noted plaintiffs' counsel's absence, and reported to the district judge that "the government will shortly move to dismiss the complaint for failure to exhaust administrative remedy." Even so, some settlement negotiations continued.

To make a tedious tale tolerably terse, the government, prodded by the district judge, moved for dismissal on May 15, 1991. The motion papers averred that plaintiffs had failed to prosecute their claims diligently at either the administrative or judicial levels. Among other things, the government proffered the affidavit of a local DOA staffer attesting to plaintiffs' failure to perfect their administrative claims. Without waiting for plaintiffs' objection, the district court dismissed the case with prejudice under Fed. R.Civ.P. 41(b). Judgment entered on May 28, 1991.[1]

At that point, plaintiffs and their lawyer, figuratively speaking, played the ostrich, burying their heads in the sand and ignoring the adverse judgment. They did not ask that the dismissal be vacated so that their opposition, *see supra* note 1, might be more fully considered; they did not move for reconsideration of the order; they did not take an appeal; they did not seasonably seek post-judgment relief. Withal, plaintiffs suggest that they continued to pursue negotiations, eventually reaching what plaintiffs' counsel describes as a tentative agreement (ironically, with the same DOA representative who had executed the aforementioned affidavit) for a $60,000 settlement. They concede, however, that the United States Attorney's office declined to approve any settlement, presumably because the lawsuit had been dismissed with prejudice.[2] They also con-

cede that they never asked the district court to enforce the supposed settlement. Rather, plaintiffs resumed their struthionine pose. It was not until September 28, 1992—sixteen months to the day after judgment entered— that they filed a motion under Fed.R.Civ.P. 60(b)(6).[3] The court below denied the motion without fanfare. This appeal followed.

## II. ANALYSIS

 District courts enjoy considerable discretion in deciding motions brought under Civil Rule 60(b). We review such rulings only for abuse of that wide discretion. *See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 19 (1st Cir.1992); *Rodriguez–Antuna v. Chase Manhattan Bank Corp.*, 871 F.2d 1, 3 (1st Cir.1989); *Ojeda–Toro v. Rivera–Mendez*, 853 F.2d 25, 28 (1st Cir.1988).

In this case, plaintiffs' theory seems to be that, because DOA's representative continued to negotiate after judgment entered, the lower court should have excused plaintiffs' failure to appeal or otherwise contest the dismissal. This contention has a variety of flaws. Without endeavoring to cover the waterfront, we offer four reasons why plaintiffs' theory is unavailing. In the course of that recital, we assume the truth of the fact-specific statements contained in plaintiffs' motion, but do not credit "bald assertions, unsubstantiated conclusions, periphrastic circumlocutions, or hyperbolic rodomontade." *Superline*, 953 F.2d at 18.

 *First:* Rule 60(b) seeks to balance the importance of finality against the desirability of resolving disputes on the merits. *See id.* at 19. The rule's first five subsec-

---

**1.** Plaintiffs filed an opposition to the dismissal motion one day after the judge granted the government's motion but five days before final judgment entered.

**2.** It is transparently clear that the DOA staffer had no authority to settle the claim without the approval of an appropriate Justice Department official or, perhaps, the Secretary of Agriculture. *See* 28 U.S.C. § 2672 (providing that FTCA settlements in excess of $25,000 may only be effected with the prior written approval of the Attorney

General or his designee; providing further that, apart from Justice Department personnel, only "the head of the agency" may serve as the Attorney General's delegee).

**3.** Plaintiffs' motion for relief from judgment mentioned the negotiations, but contained no substantiation for the claimed settlement: no confirmatory correspondence, no affidavit from the DOA official who allegedly participated in the negotiations, no affidavit from plaintiffs' lawyer.

tions delineate specific grounds for relief.[4] In keeping with the policy that "there must be an end to litigation someday," *Ackermann v. United States*, 340 U.S. 193, 198, 71 S.Ct. 209, 211–212, 95 L.Ed. 207 (1950), the rule imposes a one-year limit on motions that invoke clauses (1)–(3). While this limit does not apply in *haec verba* to clause (6)—as the rule states, motions invoking clauses (4)–(6) must only "be made within a reasonable time"—clause (6) is designed as a catchall, and a motion thereunder is only appropriate when none of the first five subsections pertain. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 & n. 11, 108 S.Ct. 2194, 2204 & n. 11, 100 L.Ed.2d 855 (1988); *Klapprott v. United States*, 335 U.S. 601, 613, 69 S.Ct. 384, 389, 93 L.Ed. 266 (1949); *Lubben v. Selective Serv. Sys. Local Bd.*, 453 F.2d 645, 651 (1st Cir.1972).

■ Here, plaintiffs' attempt to garb their motion in the raiment of clause (6) runs aground on the bedrock principle that clause (6) may not be used as a vehicle for circumventing clauses (1) through (5). The essence of plaintiffs' argument is that, under all the circumstances, their failure to contest the dismissal constituted understandable, ergo, excusable, neglect. On its face, that theory falls squarely within the encincture of Rule 60(b)(1) and, as such, plaintiffs' motion, filed more than one year after the entry of judgment, was time-barred. *See Pioneer Inv. Servs. Co. v. Brunswick Assoc.*, —— U.S. ——, ——, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993) (explaining that, where "a party is partly to blame for the delay," post-judgment relief "must be sought within one year under subsection (1)").

■ *Second:* Plaintiffs' belated effort to set aside the adverse judgment also runs afoul of the admonition that Rule 60(b)(6) may not be used to escape the consequences of failure to take a timely appeal. *See Ackermann*, 340 U.S. at 197–200, 71 S.Ct. at 211–212; *Mitchell v. Hobbs*, 951 F.2d 417, 420 (1st Cir.1991); *Lubben*, 453 F.2d at 651; *see also Ojeda–Toro*, 853 F.2d at 28–29 (collecting cases). In our adversary system of justice, each litigant remains under an abiding duty to take the legal steps that are necessary to protect his or her own interests. *See Ackermann*, 340 U.S. at 197, 71 S.Ct. at 211. Thus, Rule 60(b)(6) may not be used as a back-door substitute for an omitted appeal, and, in all but the most exceptional circumstances, a party's neglect to prosecute a timeous appeal will bar relief under the rule. *See Ackermann*, 340 U.S. at 197–202, 71 S.Ct. at 211–213; *Mitchell*, 951 F.2d at 420; *United States v. Parcel of Land, Etc. (Woburn City Athletic Club, Inc.)*, 928 F.2d 1, 5 (1st Cir.1991); *Lubben*, 453 F.2d at 651.

■ There are no sufficiently exceptional circumstances here. To be sure, plaintiffs strive to show the contrary. Citing *United States v. Baus*, 834 F.2d 1114 (1st Cir.1987), they argue that DOA acted in a Svengali-like manner, lulling them to sleep with settlement songs while the sands of time drained and the appeal period expired. This deception, they say, justifies relief under Rule 60(b)(6). The district court did not agree. Nor do we.

■ *Baus* is readily distinguishable. There, defendants (the guarantors of a debt owed to a federal agency) moved, long after the fact, for relief from a judgment entered pursuant to a settlement agreement they had made with the United States. *Id.* at 1115–

---

4. The rule states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application, or
> (6) any other reason justifying relief from the operation of the judgment.
> The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment order or proceeding was entered or taken.

Fed.R.Civ.P. 60(b).

16. We determined that the government had been dilatory in performing its side of the bargain and had probably breached its obligations under the settlement agreement. *Id.* at 1124–25. We also noted that three Assistant United States Attorneys had assured the defendants that a further judicial determination of indebtedness was necessary before the United States could collect on the guarantees, and that the defendants relied on these assurances.[5] *Id.* at 1117. In such straitened circumstances, we ruled that the government, by virtue of a combination of dilatory practices, disregard of contractual obligations, and repeated assurances, had so muddied the waters that it "would result in manifest unfairness to deny relief" under Rule 60(b)(6). *Id.* at 1123.

The case at bar is far removed from *Baus.* The plaintiffs' Rule 60(b)(6) motion makes no claim that, but for some misleading conduct attributable to the government, plaintiffs would have prosecuted a timely appeal. There is nothing in the present record to demonstrate that the government stalled the processing of the claims, breached any promise, or otherwise acted in bad faith; even in this court, plaintiffs do not suggest that the government ever said it would waive the exhaustion requirement or overlook the judgment's legal effect.[6] There is, moreover, nothing to indicate any kind of impediment to plaintiffs' ability to protect their legal interests in a timely manner. Unlike in *Baus,* the plaintiffs instigated the litigation. They knew the status of their claims at all stages. They could have appealed from the entry of judgment, but did not. And, finally, the

plaintiffs appreciated the significance of the judgment.[7]

Because plaintiffs advance neither an objectively reasonable basis for not challenging the judgment in a timely manner nor evidence indicating a pattern of affirmative action on the government's part which would have led a reasonably prudent person to believe that the dismissal order was something other than it was, *Baus* does not assist their cause. Rather, we think that plaintiffs' situation is much more akin to *Ackermann.* After suffering an adverse judgment in denaturalization proceedings and failing to prosecute a timely appeal, Ackermann sought relief under Rule 60(b)(6). 340 U.S. at 194–95, 71 S.Ct. at 209–210. He alleged, *inter alia,* that he relied upon advice from a government official who assured him there was no need to appeal as he would ultimately be released. *See id.* at 196, 71 S.Ct. at 210. In affirming the denial of Ackermann's Rule 60(b)(6) motion, the Court stated:

> It is not enough for petitioner to allege that he had confidence in [the government official] ... [A]nything said by [the government official] could not be used to relieve petitioner of his duty to take legal steps to protect his interest in litigation in which the United States was a party adverse to him.

*Id.* at 197, 71 S.Ct. at 211 (citations omitted). In language which appears patently pertinent to the pitiful predicament of the present plaintiffs, the Court concluded that, since Ackermann had made "a considered choice not to appeal," he "cannot not be relieved of

---

5. Furthermore, the judgment in *Baus* entered pursuant to a stipulation; thus, the defendants had no right of direct appeal. After all, a party who has agreed to the entry of a judgment without any reservation may not thereafter seek to upset the judgment, save for lack of actual consent or a failure of subject matter jurisdiction. *See Dorse v. Armstrong World Indus., Inc.,* 798 F.2d 1372, 1375 (11th Cir.1986); 9 James W. Moore et al., *Moore's Federal Practice* ¶ 203.06 (2d ed. 1993) ("A party that consents to entry of a judgment waives the right to appeal from it.").

6. The motion papers contain no allegation either that the DOA official who ostensibly conducted the negotiations knew about the entry of judgment or that plaintiffs' counsel discussed that subject with DOA personnel.

7. It is beyond peradventure that plaintiffs recognized the import of the order dismissing the case with prejudice. It was for this very reason that plaintiffs, in their opposition to the Rule 41 motion, argued vociferously that they should be allowed to take a voluntary dismissal without prejudice under Rule 41(a)(1) rather than having their case dismissed with prejudice under Rule 41(b). In support of this position, plaintiffs claimed that negotiations were ongoing and settlement was "imminent." Given these contemporaneous statements, it is disingenuous of plaintiffs' counsel to suggest that the continuation of settlement negotiations led him to forgo an appeal, thinking that the judgment could not block the realization of a negotiated settlement.

such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the [final] outcome." *Id.* at 198, 71 S.Ct. at 212. So here. Even if plaintiffs reasonably believed that DOA's representative had authority to negotiate a settlement, this belief in no way gave them an indeterminate carte blanche to ignore the district judge's entry of a final judgment. *See, e.g., Lubben,* 453 F.2d at 652 (suggesting that, so long as the decision not to take an appeal was one of unfettered choice and free will, courts should refrain from speculating on the reasons why a laggard party did not seasonably pursue an attack on an adverse judgment).

We will not paint the lily. "[T]o justify relief under subsection (6), a party must show extraordinary circumstances suggesting that the party is faultless in the delay." *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1497. The instant plaintiffs do not qualify under so rigorous a standard. Their unilateral assumption that they could negotiate and settle their claims notwithstanding the court's decree falls woefully short of establishing either their own lack of fault or the kind of exceptional circumstances necessary for relief under Rule 60(b)(6).

*Third:* Assuming, for argument's sake, that plaintiffs' motion was otherwise within the rule's purview, it would nevertheless fail on temporal grounds. We explain briefly.

A Rule 60(b)(6) motion "must be made within a reasonable time." What is "reasonable" depends on the circumstances. *Cf., e.g., Sierra Club v. Secretary of the Army,* 820 F.2d 513, 517 (1st Cir.1987) (explaining that "reasonableness is a mutable cloud, which is always and never the same") (paraphrasing Emerson). Thus, a reasonable time for purposes of Rule 60(b)(6) may be *more or less* than the one-year period established for filing motions under Rule 60(b)(1)–(3). *See Planet Corp. v. Sullivan,* 702 F.2d 123, 125–26 (7th Cir.1983) ("The reasonableness requirement of Rule 60(b) applies to all grounds; the one year limit on the first three grounds enumerated merely specifies an outer boundary.").

Here, plaintiffs waited sixteen months before filing their motion. This de-lay—overlong in virtually any event—must be juxtaposed in this case against plaintiffs' bold assertion that the supposed $60,000 settlement figure was agreed upon "within two months of the entry of the order of dismissal." Appellants' Brief at 7. If, as plaintiffs allege, they achieved so prompt a meeting of the minds, there is no valid excuse for having dawdled an additional fourteen months before alerting the district court to the changed circumstances. Such protracted delay scuttles any claim that plaintiffs' motion was "made within a reasonable time." *See, e.g., Planet Corp.,* 702 F.2d at 126 (holding, on particular facts, that a six-month delay in making a Rule 60(b)(6) motion was unreasonably dilatory); *Central Operating Co. v. Utility Workers of America, AFL–CIO,* 491 F.2d 245, 253 (4th Cir.1974) (similar; four-month delay after notice of default judgment). Having failed to move for relief from the judgment within a reasonable time, plaintiffs' attempt to bootstrap the alleged settlement agreement onto their "exceptional circumstance" argument is futile.

*Fourth:* An additional precondition to relief under Rule 60(b)(6) is that the movent make a suitable showing that he or she has a meritorious claim or defense. *See Superline,* 953 F.2d at 20; *Woburn City Athletic Club,* 928 F.2d at 5. The plaintiffs stumble over this hurdle. Their motion for relief from judgment is utterly silent on the exhaustion issue and the record is devoid of any indication that they, to this day, have ever complied with the FTCA's administrative claim requirements. Exhaustion of plaintiffs' administrative remedies is a jurisdictional prerequisite to the prosecution of their FTCA claims. *See* 28 U.S.C. § 2675(a); *see also Swift v. United States,* 614 F.2d 812, 814–15 (1st Cir.1980). Thus, notwithstanding plaintiffs' assertion that they received some settlement offer from DOA, the district court was entitled to conclude "that vacating the judgment [would] be an empty exercise." *Superline,* 953 F.2d at 20.

## III. CONCLUSION

We are not unsympathetic to plaintiffs' plight. It appears that a young

boy suffered severe injuries; that at least one federal official believes the boy's claim should be compensated; and that, as matters stand, plaintiffs have quite likely been victimized by a series of blunders on their lawyer's part (for which they may have a claim against him). But in our adversary system, the acts and omissions of counsel are customarily visited upon the client in a civil case, *see, e.g., Link v. Wabash R.R.*, 370 U.S. 626, 632–34, 82 S.Ct. 1386, 1389–90, 8 L.Ed.2d 734 (1962); *United States v. $25,721.* 938 F.2d 1417, 1422 (1st Cir.1991); *Woburn City Athletic Club*, 928 F.2d at 6; *United States v. 3,888 Pounds of Atlantic Sea Scallops*, 857 F.2d 46, 49 (1st Cir.1988), and we see no legally cognizable basis for departing from this well-established principle here. On this poorly cultivated record, we cannot say that the district court abused its discretion in refusing to reopen the final judgment.

We do not believe, however, that the lawyer's conduct should go unremarked. A judge has an abiding obligation to take or initiate appropriate disciplinary measures against a lawyer for unprofessional conduct of which the judge becomes aware. *See ABA Code of Judicial Conduct* Canon 3(D)(2) (1990). We are of the opinion that plaintiffs' counsel's handling of this matter before the lower court raises serious questions from start to finish. We therefore direct the district judge to review the record, conduct such further inquiry as he may deem appropriate, and take or initiate such disciplinary action, if any, as is meet and proper, the circumstances considered. The clerk of the district court shall also mail a copy of this opinion (translated into the Spanish language if the district judge believes such translation would be advisable) to each of the plaintiffs, at their respective home addresses. *See, e.g., Doyle v. Shubs*, 905 F.2d 1, 3 (1st Cir.1990) (per curiam).

*Affirmed. Remanded to the district court, with instructions, for consideration of a collateral matter.*