June 16, 1994
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1896
No. 93-1897

COOL LIGHT COMPANY, INC.,
Plaintiff, Appellant,

v.

GTE PRODUCTS CORPORATION,
Defendant, Appellee.

ERRATA SHEET

Please make the following correction in the opinion in
the above case released on May 25, 1994:

Page 2, line 8: delete the word "counsel"

Page 2, line 9: insert the word "been" between "have"
and "raised"

Page 6, line 10: insert, after the open parenthesis,
"belonging to a different law firm than
the firm representing GTE on appeal,
and"

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1896
No. 93-1897

COOL LIGHT COMPANY, INC.,

Plaintiff, Appellant,

v.

GTE PRODUCTS CORPORATION,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Breyer, Chief Judge,

Torruella and Stahl, Circuit Judges.

Edwin A. McCabe with whom Karen Chinn Lyons, Joseph P. Davis, III

and The McCabe Group were on brief for appellant.

Allan van Gestel with whom Marie P. Buckley, John B. Daukas, and

Goodwin, Procter & Hoar were on brief for appellee.

May 25, 1994

BREYER, Chief Judge. The appellant, Cool Light

Company, Inc. ("Cool Light"), asks for relief from an

adverse judgment, Fed. R. Civ. P. 60(b)(6), on the ground

that Judge McNaught, the judge who initially tried this

case, was prejudiced -- or, at least, gave the appearance of

prejudice -- against it. 28 U.S.C. 455(a), (b). In

deciding whether or not Rule 60(b)(6) relief is appropriate,

we have examined the charges and counter-charges of

impropriety that have been raised. We have assumed, but

purely for argument's sake, that Cool Light could

demonstrate a significant degree of partiality (or

appearance of partiality) on the part of Judge McNaught.

And, we have asked whether any such partiality would justify

the type of relief that Cool Light now seeks.

Upon examining the record, we found that Cool

Light has already received what was, in essence, a new trial

on the key issues and that Judge Keeton (the judge assigned

to this matter upon Judge McNaught's retirement)

independently reviewed Judge McNaught's decision to grant a

new trial. Cool Light would have received no more had Judge

McNaught decided to recuse himself. And, that being so, we

conclude that Judge Keeton's decision not to grant Rule

60(b) relief was lawful.

-3-
3

-4-
4

I

Background

A

The Dispute Between the Parties

In the 1970's, Cool Light tried to develop and

sell a special kind of lighting, to be used by film-makers,

which would generate less heat than the lighting then

customarily used. As part of this effort, Cool Light

contacted the appellee, GTE Products Corporation ("GTE"),

and the parties discussed the possibility of GTE's

developing and supplying the necessary special light

reflectors. Cool Light placed purchase orders for

reflectors; it later found GTE's reflectors unsatisfactory;

it refused to pay money that GTE thought it owed; and GTE

stopped supplying the reflectors. Eventually, Cool Light

went out of business.

B

Cool Light's Lawsuit

In 1984, Cool Light filed a lawsuit against GTE.

The heart of the lawsuit consisted of a claim that GTE had

failed to supply the reflectors it had promised and that, as

a result, Cool Light went out of business. In Cool Light's

view, the core facts that Cool Light alleged (when

-5-
5

supplemented by various alleged subsidiary facts) entitled

it to damages under several different legal theories. Cool

Light said that GTE's failure to supply proper reflectors 1)

violated the express terms of its contract with GTE, 2)

violated an implied term in its contract to deal in "good

faith," and 3) demonstrated that various GTE pre-contract

statements about the reflectors and GTE's plans to produce

other lighting products were fraudulent. Cool Light also

said that GTE's course of behavior amounted to 4) an unfair

trade practice, Mass. Gen. L. ch. 93A, and 5) unfair

competition, Cal. Bus. & Prof. Code 17200. Cool Light

tried the first three of these claims to a jury. It tried

the latter two claims to Judge McNaught for decision without

a jury.

Judge McNaught found against Cool Light on each of

the non-jury claims. The jury, however, found in Cool

Light's favor on the breach of contract and fraud claims.

It assessed damages of $3.694 million for breach of the

express terms of the contract; of $2.8 million for breach of

the implied "good faith" dealing contract term; and of $9.45

million for fraud. Judge McNaught found that the jury's

verdicts were inconsistent. He set them aside and ordered a

new trial.

-6-
6

At the second trial, Cool Light waived its right

to a jury trial on its contract and fraud-related claims.

Both parties asked Judge Keeton -- replacing Judge McNaught,

who had retired -- to make findings of both fact and law,

based on the record of the first trial plus the testimony of

certain additional witnesses. Judge Keeton did so, and he

found in GTE's favor. Cool Light then appealed, claiming

that Judge McNaught should have accepted the jury's findings

and not ordered a new trial. After examining the record, we

found that the order for a new trial was lawful, and we

affirmed the judgment for GTE that Judge Keeton had entered

after that new trial. Cool Light Co. v. GTE Prods. Corp.,

973 F.2d 31 (1st Cir. 1992), cert. denied, 113 S. Ct. 1417

(1993).

We add one further background point. Initially,

this case involved a further set of claims by Cool Light

that GTE had misappropriated various trade secrets and

confidential business information. For purposes of

expositional clarity, we shall postpone discussion of these

claims until Part IIB of this opinion, where we shall

explain why their initial presence in this case makes no

difference to our result.

C

-7-
7

Cool Light's Rule 60(b) Motion

On December 1, 1992, Cool Light moved, under Rule

60(b)(6), for relief from Judge Keeton's judgment. Cool

Light said in its motion that jurors from the first trial

had contacted Cool Light's owner, George Panagiotou, and

Cool Light's lawyer, Edwin A. McCabe, and had told them that

Judge McNaught had spoken to the jurors after they had

reached their verdict. According to the jurors, the judge

told them 1) that he strongly disagreed with their verdict,

and 2) that he knew that George Panagiotou previously had

been "belonging to a different law firm thatn the firm

representing GTE on appeal, and involved with drugs." Cool

Light said that this last mentioned remark (about drug

involvement) showed that Judge McNaught was prejudiced

against it and meant that Judge McNaught should have recused

himself. Cool Light added that, during the first trial, Mr.

Panagiotou saw one of GTE's lawyers (once a law clerk for

Judge McNaught) enter Judge McNaught's chambers

unaccompanied by lawyers for Cool Light. Cool Light

concluded that, as a result, it was legally entitled to

reinstatement of the first-trial jury verdict, to an

independent reexamination of Judge McNaught's new trial

determination, and to an independent reexamination of Judge

-8-
8

McNaught's determination of the non-jury issues -- or, in

the alternative, to a new trial.

Judge Keeton denied the Rule 60(b)(6) motion.

Cool Light Co. v. GTE Prods. Corp., 832 F. Supp. 449 (D.

Mass. 1993). He found that his further, and independent,

review of the entire record led him to the same conclusion

that Judge McNaught had reached, that is to say, had he

presided at the first trial, he would have set the jury

verdict aside and ordered a new trial. Id. at 460. Judge

Keeton also said that, had Judge McNaught recused himself as

Cool Light says he should have done, Cool Light would simply

have received a new trial. Id. at 461. He concluded that

Cool Light, in essence, had already received that to which

the law would entitle it were its claims of impropriety or

partiality true. Id. at 460-61.

Judge Keeton did not characterize Judge McNaught's

alleged remark to the jury either as inappropriate or as

proper. He did, however, characterize Cool Light's

accusations of misconduct by opposing counsel as "vague and

wholly unsupported." He also found that there was "a prima

facie basis" for believing that Cool Light, and its counsel,

Mr. McCabe, had violated the rules governing "post-verdict

contact with jurors." Id. at 467. (Subsequently, Bar

-9-
9

Counsel wrote to Mr. McCabe stating that "[i]n light of

existing . . . case law permitting some level of

investigation in response to unsolicited communications from

jurors," she was "not pursuing this matter further," though

shesuggested"that inthefuture,"he "errontheside ofcaution.")

Ultimately, Judge Keeton entered a final order

denying Cool Light's Rule 60(b)(6) motion for relief from

judgment. Cool Light now appeals from that order.

II

The Rule 60(b)(6) Decision

In reviewing the district court's denial of Cool

Light's Rule 60(b)(6) motion, we need not explore the merits

of the various claims of impropriety. Indeed, it would be

difficult to discover what, in fact, occurred, for the judge

in question has died. Rather, for purposes of this appeal,

we shall simply assume, for argument's sake, that the judge

made the statements that Cool Light attributes to him, and

we shall also assume circumstances such that the statements

would have called for recusal. See Liteky v. United States,

114 S. Ct. 1147, 1155-57 (1994). Despite these assumptions

favorable to Cool Light, we nonetheless find that the

district court's decision to deny the motion lay well within

the scope of its broad Rule 60(b) authority. Cotto v.

-10-
10

United States, 993 F.2d 274, 277 (1st Cir. 1993); Teamsters,

Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v.

Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992).

-11-
11

A

The Parties' Contract and Fraud Disputes

Our reasoning in respect to the claims arising out

of the basic substantive dispute between the parties is the

same as that of Judge Keeton. Had Judge McNaught recused

himself, Cool Light would have had a new trial before a

different judge. Pontarelli v. Stone, 978 F.2d 773, 775

(1st Cir. 1992). Cool Light, however, did have a new trial

before a different judge. And, the law entitles it to no

more.

We recognize that Cool Light suggests the

existence of special circumstances requiring a different

result. But, we do not agree. First, Cool Light says that

it received a new trial only on the counts originally tried

to the jury (breach of contract; fraud). It did not receive

a new trial on the counts tried to Judge McNaught (unfair

trade practices; unfair competition). This argument is not

convincing, however, primarily because Cool Light's

different judge-tried claims, like its various jury-tried

claims, amount to dressing up what are essentially the same

facts in different sets of legal clothes. In particular,

Judge Keeton's unappealed (second trial) findings that GTE

did not cause the harm Cool Light alleged, that GTE had not

-12-
12

breached its agreement with Cool Light, that GTE did not

commit fraud, and that Cool Light failed to prove damages

with sufficient specificity, would collaterally estop Cool

Light from successfully arguing the contrary in any further

proceeding related to the judge-tried claims. Federated

Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398-402 (1981);

Sidney v. Zah, 718 F.2d 1453, 1457-58 (9th Cir. 1983); Itel

Capital Corp. v. Cups Coal Co., 707 F.2d 1253, 1260-61 (11th

Cir. 1983); Hurley v. Beech Aircraft Corp., 355 F.2d 517,

522 (7th Cir.), cert. denied, 385 U.S. 821 (1966). As far

as the briefs and papers before us reveal, the overlap

between the two sets of claims is such that, given the

second trial findings, any further trial on related matters

would simply prove "an empty exercise," which circumstance

makes appropriate, and lawful, the denial of Rule 60(b)

relief. Cotto, 993 F.2d at 280; Superline, 953 F.2d at 20.

Second, Cool Light suggests that we should not

treat Judge Keeton's unappealed second trial findings as

binding because it did not know about Judge McNaught's

remark either a) when it decided what evidence to present to

Judge Keeton, or b) when it filed its appeal. Cool Light

has failed to show us, however, how any earlier knowledge

could have made a significant difference. Judge Keeton gave

-13-
13

Cool Light a full opportunity to present additional evidence

at the second trial. Cool Light has not explained how, or

why, knowledge of Judge McNaught's remark would have led it

to produce significantly different evidence. Nor has it

suggested any legal flaw in Judge Keeton's second trial

findings. Neither is there any unusual problem in respect

to timing. Cool Light, in fact, found out about Judge

McNaught's remark after it received our opinion in its first

appeal but while its petition for rehearing was pending and

about one month before our mandate issued. The consequence

of Cool Light's failure to show why earlier knowledge would

have mattered, in our view, is that the law would give to

Judge Keeton's findings their normal preclusive effect.

Third, Cool Light says that, on grounds of

elementary fairness, the remedy for Judge McNaught's

"partiality," which (in Cool Light's view) led him to set

aside the jury verdict is either 1) simple reinstatement of

the verdict or 2) an independent judicial review of the new

trial decision. Elementary fairness, however, does not

argue for reinstatement of the verdict. Rather, often if

not ordinarily, the remedy for a serious procedural flaw is

new, better, and fairer procedure, not a monetary award to

the losing party. Pontarelli, 978 F.2d at 775. Moreover,

-14-
14

despite Cool Light's strong contrary protestations, our

review of the record indicates that Judge Keeton gave Judge

McNaught's "new trial" decision that very new and

independent review, with appropriate deference for the jury

verdict, for which Cool Light argues. Judge Keeton wrote:

[W]hen I now make an independent review
of the evidence offered in the two
trials combined I conclude that the
verdict [at the first trial] should have
been set aside and, at the least, a new
trial should have been granted, if
indeed the court did not instead order
judgment for the defendant
notwithstanding the verdict.

Cool Light, 832 F. Supp. at 461.

For these reasons, we consider lawful Judge

Keeton's denial of the Rule 60(b)(6) motion, in respect to

all counts related to the underlying contract or fraud

disputes between the parties.

B

The Trade Secret Claims

Cool Light, in its initial complaint, set forth

several other legal claims that we have not yet discussed.

Those claims essentially rested upon its assertion that GTE

had misappropriated trade secrets and confidential business

information. Cool Light set forth several different legal

theories that, in its view, entitled it to damages based

-15-
15

upon that alleged theft. See, e.g., Plaintiff's Complaint

Count IV (Taking of a Trade Secret, Mass. Gen. L. ch. 93

42); id. Count VII (Unjust Enrichment). As was true of the

contract and fraud claims, Cool Light, at the first trial,

tried some of its trade secret related claims to a jury and

others to the judge.

The trade secret related claims differ from the

contract and fraud related claims, however, in that both

judge and jury found against Cool Light on all the claims

involving trade secrets. Further, Cool Light chose not to

retry the jury-tried claims before Judge Keeton. And, Cool

Light has not provided us with any information suggesting

that, despite the jury's having found against it in respect

to those claims, a new trial would likely produce a

different result. Finally, Judge Keeton's binding findings

in the second trial, many of which touch on necessary

elements of the trade secrets claims, would make it

difficult, if not impossible, for Cool Light to prevail in a

new trial. The upshot is that Cool Light has not provided

us with any reason to believe it has a "potentially

meritorious" trade secret related claim, Superline, 953 F.2d

at 20, or that a new trial on the trade secret related

counts would be other than "an empty exercise," id. For

-16-
16

these reasons, the district court's denial of the Rule

60(b)(6) motion inrespect to those claims waslegally proper.

The judgment of the district court is

Affirmed.

-17-
17